Argued June 11, affirmed July 9, 1958

# STATE OF OREGON *v.* NOBLIN
### 328 P. 2d 139

*John H. Horn* argued the cause for appellant. On the brief were Horn and Slocum, Roseburg.

*Avery W. Thompson,* District Attorney, Roseburg, argued the cause for respondent. With him on the brief was Bert Burgoyne, Deputy District Attorney, Roseburg.

Before PERRY, Chief Justice, and ROSSMAN, LUSK, WARNER, MCALLISTER and SLOAN, Justices.

SLOAN, J.

Defendant was indicted, tried by a jury and found guilty of the charge of assault with a dangerous weapon. Defendant appeals and asserts numerous assignments of error. We believe only two of these merit discussion.

One of these concerns the admission of evidence and the other asserts that the court erred in failing to sustain the defendant's motion for a judgment of acquittal at the conclusion of the state's case. Although imperfectly presented, the effect of these two assignments is to question the sufficiency of the indictment to sustain a verdict of guilty upon the state's evidence.

The pertinent statute, ORS 163.250, provides:

"Any person, who is armed with a dangerous weapon and assaults another with such weapon, shall be punished * * *."

The indictment charged that:

"* * * on the 2nd day of May A. D. 1957, in the said County of Douglas and State of Oregon, then and there being, and then and there acting together and in concert with one Donald Lee Reavis, and being then and there armed with a dangerous weapon, to-wit: 22 cal. rifle, did then and there unlawfully and feloniously assault one Lee Camp-

bell by then and there threatening, molesting and menacing the said Lee Campbell with such dangerous weapon, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

Briefly stated, the evidence introduced by the state was sufficient to establish that at about 10 p. m. of the day in question the defendant, in company with one Donald Lee Reavis and others, was in or near the town of Riddle, Oregon, in an automobile operated by Reavis. The alleged victim of the assault, Lee Campbell, was then a police officer of Riddle. He had stopped another car and was standing beside that car when Reavis drove alongside the officer and asked the direction to Riddle. Campbell testified the attitude of Reavis was such as to arouse his suspicion of intoxication and told Reavis to wait a few minutes until he (Campbell) could finish his present business. Instead of complying with Officer Campbell's order Reavis drove on. Campbell then pursued and stopped the Reavis car within the town of Riddle. Reavis and Campbell alighted from the respective vehicles and proceeded to become involved in an altercation in which Reavis resisted Campbell's attempts to arrest him. Campbell, in so doing, alternately used his flashlight and "black-jack" or "sap" as a club in attempting to subdue Reavis. He also discharged a tear-gas shell or gun against the upper portion of Reavis' body or face. The evidence indicates this defendant took no part in the fray. He apparently made some ineffectual efforts to prevail upon Reavis to go with Campbell. During the course of the ruckus Officer Campbell found himself at the front end of the Reavis car, at which juncture Reavis and the defendant entered the car and threatened to run him down if he did not

get out of the way. Campbell then drew his pistol and by its use averted this threat. He returned his pistol to its holster when onlookers gave some indication of assistance. He then again attempted to forcibly remove Reavis from the car. The victim describes the then immediately forthcoming actual alleged assault in these words:

"A Yes, sir. They got back out of the car when these men came up there. He backed off, squared off and said I wasn't going to take him anywhere. About that time Mr. Noblin went around to the driver's side of the vehicle—the door was open—and came out with this pump .22 rifle.

"Q What did he do with the rifle?
"A Well, I heard him rack the slide back and raised the rifle up about waist high, like this, and pointed it toward me.

"Q Now, on what side of the automobile was he?
"* * * * *. [At this point in the alleged victim's testimony defendant interposed an objection that evidence of pointing the gun and its use as a firearm was inadmissible to sustain the allegation of the indictment. The court overruled the objection.]

"MR. THOMPSON: Would the reporter read the question?

"REPORTER: Question: What did he do with the rifle? Answer: Well, I heard him rack the slide back and raised the rifle up about waist high like this and pointed it toward me. Question: Now, on what side of the automobile was he?

"Q Where was he standing now in relation to his automobile or the Reavis automobile?
"A Beside the car on the driver's side, with the door open.

"Q And where was the barrel of the gun at that time in relation to the automobile?
"A I believe it was between the door and the

windshield, that place that opens up when the door is open. I believe it makes kind of a 'V' where the door is open and the slope of the windshield.

"Q   Where was the barrel of the gun in relation to the hood of the car over the motor?

"A   He held it something like this. It was along the side.

"Q   Where were you standing at that time?

"A   Near the right front headlight.

"Q   And did he—did you—what did you say or what did he say?

"A   Well, he says if you make a move for that gun again I am going to kill you.

"Q   Where was your gun at that time?

"A   In the holster.

"Q   All right. What else was said?

"A   Well, at that time he told me to walk."

The motion for directed verdict, as well as defendant's objection to the introduction of this evidence, questions the sufficiency of the allegations of the indictment to permit the above evidence of the pointing of the .22 caliber rifle as a firearm to be received and considered as proving an assault with a dangerous weapon. It is contended that the failure of the indictment to charge that it was a loaded gun precluded the state from establishing an assault by mere evidence of the pointing of the gun. This presents two issues. The first, is the language of the indictment sufficient to charge the crime defined by the statute? And second, was there sufficient evidence of an assault, as charged, to warrant the consideration of the jury?

■■   The indictment was in the language of the statute and sufficient to charge the crime. *State v.*

*Smith,* 182 OR 497, 502, 188 P 998; *People v. Savercool,* 81 Cal 650, 22 P 856. It follows that the challenged evidence was admissible under the indictment.

It is true that this court has held that the pointing of an unloaded gun, as such, cannot constitute an assault. *State v. Godfrey,* 17 Or 300, 20 P 625, 11 Am St Rep 830. However, by the same authority, at page 307, it is held that it is the "peculiar and exclusive" province of the jury to determine whether or not a pointed gun is loaded.

It has several times been held that when an assault with a firearm has been committed with an intent to rob, the jury may infer that the gun in question was loaded. *State v. Lanegan,* 192 Or 691, 703, 236 P2d 438. In *State v. Milo,* 126 Or 238, 244, 269 P 225, it is said:

"* * * It is unnecessary for the victim of a holdup to visualize the powder and leaden ball within the highwayman's gun, or to subject his body to gun-fire, in order to vindicate the law. The outlaw who attempts to rob another by putting such other in fear of death or great bodily harm through his conduct in deliberately pointing a gun at such other at close range, impliedly represents that the gun is loaded, and the proof of such conduct establishes prima facie that the gun so used was loaded and capable of being discharged: 1 Wharton's Crim. Ev. (10 ed.), p. 667 and note."

■ We see no reason why the same rule should not apply in an offense charged under the instant statute. Where an assault is accomplished by the pointing of a gun in a threatening manner and within the obvious range of the gun, the victim and the jury are justified in inferring that the gun is loaded.

■ In this instance the defendant, after making the threat above set forth, commanded the victim to march

across an adjoining field by the threat of the gun and accompanying words implying the use of the gun if the victim did not obey the defendant's orders. Following this the defendant entered the Reavis car and, together with Reavis and the other occupants, fled the scene. The defendant drove the car. Other testimony revealed the gun was apparently thrown from the car at grounds used for trap shooting some distance away. See *Jackson v. United States,* 102 F 473, at page 484 et seq., where it is held that a similar use and disposition of a gun presented a jury question as to whether or not the gun was loaded when the charged assault occurred. There was no error in denying defendant's motion for judgment of acquittal.

The defendant's other assignments have been carefully considered and do not merit further discussion. The defendant received a completely fair trial and the court's instructions were probably more favorable than he was entitled to. In no event would any of the other assignments, if correct, be of such prejudicial character as to warrant reversal of this case.

Affirmed.