Argued October 11, affirmed October 19, 1960

## STATE OF OREGON *v.* HEDRICK
356 P. 2d 91

*Charles D. Burt,* Salem, argued the cause for appellant. On the brief were Day & Burt, Salem.

*Walter W. Foster,* District Attorney, Dallas, argued the cause for respondent.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and HOWELL, Justices.

HOWELL, J. (Pro Tempore)

The defendant appeals from a conviction of assault with a dangerous weapon.

His first assignment of error is based upon the overruling of his objection to the taking of any testimony upon the ground that the indictment failed to state sufficient facts to charge him with the commission of a crime. He argues that the indictment failed to allege that the dangerous weapon, a .22 caliber revolver, was loaded, or capable of being fired or within range of the victim.

■ The indictment was in the language of the statute and is sufficient to charge the crime. *State v. Noblin*, 214 Or 60, 328 P2d 139. It is now the settled law of this state that an indictment charging assault with a dangerous weapon need not allege that the gun involved was loaded. *State v. Noblin*, supra; *State v. Steagall*, 214 Or 116, 328 P2d 142. See also *State v. Muguerza*, 46 Idaho 456, 268 P 1; *State v. Bush*, 50 Idaho 166, 295 P 432; 6 CJS 968, Assault and Battery § 110. Whether the weapon was operable and within range is also a matter of proof.

The indictment stated a crime, and there is no merit in this assignment.

Defendant's other two assignments of error require a brief review of the facts.

The defendant was charged with assaulting one Gerald Lewin. Shortly before the assault in question Lewin and the defendant had a prior altercation in a cafe at the same scene. Defendant departed badly

defeated. A Harry Dawson, called as the state's first witness, was present during at least part of the first fight. As Dawson started to drive away from the cafe in his truck, the defendant suddenly reappeared in a car and stopped in front of the Dawson truck. Dawson testified the defendant alighted from his car with a gun in his hand and "hollered" at him. Mrs. Dawson, who was also present, ran back to the cafe and summoned Lewin for assistance. Dawson testified on cross-examination that when Lewin approached them the defendant had the gun "on me" and that he then turned the gun on Lewin and said he would "kill him, *too*." (Emphasis supplied.) Dawson also testified that the defendant had the gun "right in his [Lewin's] stomach." Dawson "chopped" the gun from the defendant's hand, and the defendant was subdued again. When the police arrived it was discovered that the pin and cylinder had become detached from the gun and were lying on the ground. However, a live .22 shell was in the cylinder, and at least three more shells were on the ground.

Defendant assigns as error the denial of a motion for dismissal made at the close of the state's case on the ground that there was no evidence that the gun was loaded and capable of being fired.

In *State v. Noblin,* supra, we said:

"* * * Where an assault is accomplished by the pointing of a gun in a threatening manner and within the obvious range of the gun, the victim and the jury are justified in inferring that the gun is loaded."

See also *People v. Montgomery,* 15 Cal App 315, 114 P 792; *State v. Bush,* supra; *Jackson v. United States,* 102 F 473; *Randall v. United States,* 215 F2d 587.

■ The jury was entitled to consider the evidence that the defendant held the gun in close proximity to Lewin's stomach, the threat to kill him, the several rounds of ammunition found on the ground at scene and the one live shell in the chamber. There was ample evidence for the jury to find that the gun was loaded. The jury could also have found from defendant's actions that the gun was operable and that the cylinder and pin became removed when the gun was knocked from defendant's hand and fell to the ground. It was clearly a question for the jury.

■ Defendant contends he was entitled to a mistrial because of certain questions asked by the trial judge of Mrs. Dawson:

"Q When Mr. Hedrick came up there he spoke to your husband first?

"A Yes.

"Q Even when you got up you heard? What did he say to your husband?

"A He said, 'I have had a grudge against you for a year. I am going to blow your brains out, you S.O.B.[']

"Q That is when you got out of there and went and called for help?

"A Yes, and he had the gun up behind his ear."

The defendant's actions toward Dawson were not a separate, isolated incident in the chain of events. The defendant, Dawson and Lewin were standing in close proximity to one another, and there was testimony, as mentioned, that the defendant turned the gun from Dawson to Lewin and said words to the effect: "I'll kill you, too." These facts had already been received in evidence when the court inquired of Mrs. Dawson. The defendant's counsel interrogated Mrs.

Dawson at some length on cross-examination, plus three other witnesses for the state, before moving for a mistrial. The court carefully instructed the jury to disregard its questions and Mrs. Dawson's answers. The defendant was not entitled to a mistrial, and there is no merit in this assignment.

The judgment is affirmed.