Argued July 8, affirmed September 29, 1969

Case No. C-48994

STATE OF OREGON, *Respondent, v.*
DAVID TYRONE ROISLAND,
*Appellant.*

Case No. C-49042

STATE OF OREGON, *Respondent, v.*
DAVID TYRONE ROISLAND,
*Appellant.*
459 P2d 555

*William G. Whitney*, Portland, argued the cause and filed the brief for appellant.

*Jacob B. Tanzer*, Solicitor General, Salem, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

SCHWAB, C. J.

Defendant was charged in one indictment with (1) facilitating an escape from official detention, and (2) assault with a dangerous weapon, and in a second indictment with (3) being an ex-convict in possession of a firearm. A consolidated jury trial resulted in convictions on all charges.

One Kessler had been a prisoner in the Multnomah County Jail, and, while an inmate, was transferred to the Multnomah County Hospital for treatment of an illness. The defendant entered Kessler's hospital room, and, using a revolver, relieved the deputy sheriff guarding Kessler of his weapon and his prisoner. The defendant and Kessler then left the hospital. On the following day the defendant and Kessler were located and apprehended by Portland detectives in an

apartment in which two other people were also living. At that time, neither Kessler nor the defendant had arms on his person. However, two guns, one of which was loaded, were found on the premises.

In considering the assignments of error we borrow in part from the brief filed by the state.

## ASSIGNMENT OF ERROR NO. 1

■ Defendant contends that Kessler's prison record card was hearsay and should not have been admitted as evidence that Kessler was a prisoner in official detention. A Multnomah County deputy sheriff assigned as clerk at the jail testified that he was custodian of records on his shift. He explained that in the ordinary course of the business of the jail a separate prison record card is made out for every prisoner booked into the jail at the time he is taken into custody. The desk officer makes entries regarding the movement of each prisoner on that prisoner's card at the time of such movement. The card in question showed the date on which Kessler was transferred. The notation was the sort made in the regular course of business, although the identity of the desk officer who made that specific notation was not recorded on it. Defendant argues that the exhibit was not authenticated properly for admission as a public record. It was not offered as a public record. It was offered as a business record. The county jail is a "business" under the statute which includes "institutions" under the definition of that term. ORS 41.680 provides:

> "The term 'business,' as used in ORS 41.690, shall include every kind of business, profession, occupation, calling or operating of institutions, whether carried on for profit or not."

An adequate foundation was laid for the court's admission of the document as a business record under ORS 41.690, which provides:

"A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

The prison record card was properly received as a business record.

## ASSIGNMENT OF ERROR NO. 2

■ Defendant contends that the two guns and the ammunition found in one of them should not have been received into evidence, because they were not found on the person of the defendant, and, therefore, were not relevant evidence. When the detectives arrived at the apartment, they knocked—the defendant and Kessler then attempted to flee. The defendant was apprehended inside the apartment. A fully-loaded pistol was found under the cushion of a couch approximately 10 to 15 feet from the place where he was arrested. Another gun was found close by a basement door near where Kessler was arrested. The gun which was found near Kessler was identified by the guard at the hospital as being the pistol taken from him by the defendant. A patient who shared the hospital room with Kessler at the time of the escape testified on direct examination that the gun found under the couch cushion near the defendant was "similar" to the gun which the defendant used on the hospital

guard. On cross-examination the witness said he was familiar with firearms, that he had a clear view, and that the gun offered in evidence was "identical" to the one he saw defendant use in the hospital.

The evidence was relevant to all three charges.

This assignment is controlled by *State v. Hancock*, 245 Or 240, 242, 421 P2d 687 (1966), in which the Oregon Supreme Court approved as relevant the admission of a gun which was similar to that used in a robbery and was found in an apartment to which the defendant had had access.

## ASSIGNMENT OF ERROR NO. 3

Here, the defendant contends that his motion for a judgment of acquittal should have been granted. His argument under this assignment is founded on three propositions:

(1) Facilitation of an escape was not proved because it was not shown that Kessler was in custody;

(2) The charge that defendant was an ex-convict in possession of a firearm was not proved because defendant's possession of a weapon was not shown; and

(3) Assault with a dangerous weapon was not proved because the gun was not shown to have been workable.

None of these propositions has merit.

■ Kessler was shown to have been in custody by the municipal court commitment order, by the Multnomah County Jail prison record card relating to Kessler and indicating his transfer to the hospital, and by the testimony of the deputy sheriff who was guarding him at the hospital.

■ We have already pointed out the substantial evidence of defendant's possession of a firearm under Assignment of Error No. 2.

■ As previously pointed out, the gun defendant used was found the next evening under the cushion of a couch some 10 or 15 feet from the place where defendant was arrested. It was loaded when found. The evidence was more than ample to allow an' inference that the gun was loaded and workable at the time of the defendant's assault upon Kessler's guard.

In *State v. Noblin,* 214 Or 60, 65, 328 P2d 139 (1958), this court stated that:

"* * * Where an assault is accomplished by the pointing of a gun in a threatening manner and within the obvious range of the gun, the victim and the jury are justified in inferring that the gun is loaded."

See also *State v. Hedrick,* 224 Or 329, 331, 356 P2d 91 (1960).

The motion was properly denied.

## ASSIGNMENT OF ERROR NO. 4

■ Defendant contends that he should have been allowed to impeach the psychiatrist he called to the witness stand. On his own motion, defendant had been committed to the Oregon State Hospital by the court for a pre-trial psychiatric examination. Dr. Jetmalani, who conducted the examination, was called by the defendant as his only expert. On direct examination, the psychiatrist testified that the defendant understood the nature of his conduct at the time of the criminal acts. Defense counsel then undertook to cross-examine his own witness as to the adequacy of

the psychiatric testing which produced this opinion. There is no claim of surprise or hostility—the defendant was simply unhappy with the doctor's answers. He even acknowledges that Dr. Jetmalani's opinion was known to him prior to his testimony. Dissatisfaction with his testimony is not of itself a ground for impeachment of one's witness. *State v. Briggs,* 245 Or 503, 420 P2d 71 (1966).

## ASSIGNMENT OF ERROR NO. 5

Defendant offered some evidence that a day or two before the events in issue he had consumed LSD. The defendant argues that the trial judge should not have given the following instruction:

> "Voluntary consumption of drugs is not an excuse for a crime. No act of a defendant in a voluntary drugged state is less criminal because of his condition if it merely makes him do things he would not do otherwise.

> "You may consider consumption of drugs in determining the purpose, motive or intent with which the defendant may have acted, but a voluntary drugged state is not a defense if it does not interfere with the defendant's ability to form the intent to commit the crime. To be available as a defense a voluntary drugged state must result in a diseased mind, or some other form of insanity. The burden is on the defendant to prove that defense by a preponderance of the evidence."

Defendant's challenge of the voluntary intoxication instruction as modified to apply to drugs apparently is based on the following psuedo-syllogism:

(1) The Drug Advisory Council has not lawfully designated lysergic acid diethylamide (LSD) as a dangerous drug;

(2) Therefore, LSD is merely a chemical and not a drug;

(3) Therefore, an instruction regarding drugs instead of chemicals was improper; and

(4) Therefore, a criminal act committed under the effect of LSD is excusable as due to insanity.

■ The instruction was entirely proper. It is a modification of ORS 136.400, which provides:

> "No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition; but whenever the actual existence of any particular motive, purpose or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the defendant was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act."

■ Although usually applied to cases involving intoxication from alcohol, the statute is not restricted in application. It refers to "intoxication" which means intoxication from the use of alcohol, drugs or any other toxic substance.

Oregon has not previously had occasion to apply the statute to drug usage, *State v. Abel*, 241 Or 465, 474, 406 P2d 902 (1965), although it has been strongly suggested that such instruction would be appropriate regarding the combined use of alcohol and benzedrine. *State v. Braley*, 224 Or 1, 355 P2d 467 (1960) (reversed on other grounds in *Braley v. Gladden*, 403 F2d 858 (9th Cir 1968)). Every other state considering the question has applied the principle to drug intoxication. 22 CJS 223, Criminal Law § 72; 21 Am Jur2d 188, Criminal Law § 109. Such has long been

the rule in California, for example. *People v. Fanning,* 71 Cal Rptr 641 (Ct App, 2d Dist 1968) (involving use of LSD); *People v. Baker,* 42 Cal2d 550, 268 P2d 705, 719 (1954); *People v. Lim Dum Dong,* 26 Cal App2d 135, 78 P2d 1026, 1029 (3d App Dist 1938); *People v. Sameniego,* 118 Cal App 165, 4 P2d 809, 812 (2d App Dist 1931).①

We know of no reason which requires us to limit the scope of the word "intoxication" as used in ORS 136.400 to the precise forms of mental aberration produced by excess consumption of alcohol. The voluntary use of intoxicants other than alcohol is comparable to the voluntary use of alcohol. The intent is the same. The result in the broad sense of the word is the same. There is no reason why the culpability should not be the same.

No meritorious error having been assigned, the judgment is affirmed.

---

① In other states, see also DeBerry v. Commonwealth, 289 SW2d 495 (Ky 1956), cert. den. 352 US 881, 77 S Ct 105, 1 L Ed 2d 81; State of Maine v. Quigley, 135 Me 435, 199 A 269, 273 (1938); State v. White, 27 NJ 158, 142 A2d 65, 68 (1958); S. v. English, 164 NC 497, 80 SE 72, 77 (1913); Couch v. State, 375 P2d 978 (Okla Crim 1962); Commonwealth v. Detweiler, Appellant, 229 Pa 304, 309, 78 A 271, 272 (1910).