Argued January 3, affirmed February 27, 1979

# STATE OF OREGON, *Respondent,*
## *v.*
# KENNETH HOWARD VANCE, *Petitioner.*

(TC 077-07-09250, CA 9804, SC 25892)

591 P2d 355

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the briefs was Gary D. Babcock, Public Defender, Salem.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

TONGUE, J.

Linde, J., specially concurring opinion.

## TONGUE, J.

Defendant was convicted of robbery in the first degree under ORS 164.415(1), based on an information alleging that in the course of committing theft he "threaten(ed) the immediate use of physical force" upon the victim of the robbery and "was armed with a deadly weapon, towit: a handgun." The trial court denied defendant's motion of acquittal for failure of proof that "a deadly weapon was used" (in this case, that the gun was loaded). The trial court, over defendant's exception, also instructed the jury that "if a firearm is pointed at another within firing range, you are permitted but not required to infer that the firearm was loaded." Defendant appealed.

The Court of Appeals affirmed the conviction without opinion (35 Or App 267, 582 P2d 66 (1978)). We granted defendant's petition for review because of concern over two questions, as stated in a letter from the court to counsel:

"1. The difference between first degree and second degree robbery as defined in ORS 164.405 and ORS 164.415 appears to be whether defendant's weapon is actually deadly or only 'purports to be dangerous or deadly.' In making the degree of the crime depend on this difference, did the legislature mean to let a jury infer beyond a reasonable doubt that a gun is loaded for purposes of first degree robbery from the mere representation that it 'purports to be loaded' required for second degree robbery, without additional evidence?

"2. If the answer to Question 1 is 'yes,' does this unconstitutionally place the burden on defendant to negate the distinguishing element of first degree robbery and to sacrifice his privilege not to testify?"[1]

---

[1] ORS 164.395(1) provides:

"A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft he uses or threatens the immediate use of physical force upon another person with the intent of:

"(a) Preventing or overcoming resistance to his taking of the property or to his retention thereof immediately after the taking; or

*The legislature intended to continue to permit the jury to infer that a gun pointed by a robber at a victim is loaded.*

Prior to the adoption of the new Criminal Code in 1971 it was provided by ORS 163.280 that if a person "armed with a dangerous weapon" assaulted another and robbed him of money or property, such a person, upon conviction, was subject to imprisonment for a period of up to life.[2] At that time it was also provided by ORS 163.290 that if a person "not being armed with a dangerous weapon" robbed another person of money or property, that person was subject to imprisonment for a period of up to 15 years.[3] It was also then provided by ORS 163.270 that if a person assaulted another with intent to commit robbery or rape, such a person was subject to imprisonment for up to the

"(b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft."

ORS 164.405(1) provides:

"A person commits the crime of robbery in the second degree if he violates ORS 164.395 and he:

"(a) Represents by word or conduct that he is armed with what purports to be a dangerous or deadly weapon; or

"* * * * *"

ORS 164.415(1) provides:

"A person commits the crime of robbery in the first degree if he violates ORS 164.395 and he:

"(a) Is armed with a deadly weapon; or

"(b) Uses or attempts to use a dangerous weapon; or

"(c) Causes or attempts to cause serious physical injury to any person."

[2] ORS 163.280 provided that:

"* * * [A]ny person, being armed with a dangerous weapon, who assaults another and who robs, steals or takes from the person assaulted any money or property which may be the subject of larceny, shall be punished upon conviction by imprisonment in the penitentiary for life or for any lesser term. * * *"

[3] ORS 163.290 provided that:

"Any person, not being armed with a dangerous weapon, who by force and violence, or by assault, or by putting in fear of force and violence or assault, robs, steals, or takes from the person of another any money or other property which may be the subject of larceny, shall be punished upon conviction by imprisonment in the penitentiary for not more than 15 years."

maximum period provided for the crime intended.[4] Finally, ORS 163.250 provided that if a person "armed with a dangerous weapon" assaulted another with such a weapon, that person was subject to imprisonment for a period of up to 10 years.[5]

Prior to 1971, this court had held that when, in the course of a robbery, an assault with intent to commit robbery or an assault with a dangerous weapon, a person points a gun at another within firing range the jury may infer that the gun was loaded, and therefore was a "dangerous weapon" for the purposes of ORS 163.280, 163.250 and 163.270, and their predecessor statutes.[6]

It appears from the minutes of Subcommittee No. 1 of the Criminal Law Revision Commission on November 21, 1968 (at 4), that in the course of its drafting of the present statutes defining robbery in the first, second and third degrees (ORS 164.415, 164.405 and 164.395)[7] the Commission considered whether, under such statutes, the jury could continue to infer that a gun pointed at another and used in a robbery was loaded. At that time a statement was made by Judge James Burns, as chairman of that subcommittee, to the effect that "[t]he unloaded gun situation * * * was one which frequently occurs and normally the state was not able to prove that the gun was actually

[4] ORS 163.270 provided that:

"Any person who assaults another with intent to rob or to commit rape upon the person assaulted, or to commit any of the crimes specified in ORS 163.230 shall be punished upon conviction by imprisonment in the penitentiary for a term not exceeding the maximum punishment provided by law for conviction of the respective greater crimes."

[5] ORS 163.250 provided that:

"Any person, who is armed with a dangerous weapon and assaults another with such weapon, shall be punished upon conviction by imprisonment in the penitentiary for not more than 10 years * * *."

[6] *See, e.g., State v. Noblin,* 214 Or 60, 65, 328 P2d 139 (1958); *State of Oregon v. Lanegan,* 192 Or 691, 703, 236 P2d 438 (1951); *State v. Milo et al,* 126 Or 238, 244, 269 P 225 (1928).

[7] *See* n.1, *supra.*

loaded." Judge Burns also said that "[i]f a gun were used in a robbery * * * the jury was presently entitled to infer that the gun was loaded." According to those minutes, Mr. Donald L. Paillette (Project Director for the Commission), then stated that "the language of the draft would not disturb the inference."

In addition, as conceded by defendant's counsel in this case, the Commentary to ORS 161.015, § 3 of the (then) Proposed Oregon Criminal Code, p 2 (1971) supports the same view by stating:

> "* * * But the use of a firearm within carrying distance of the threatened victim in Oregon allows an inference that the weapon was loaded and the burden of going ahead with the evidence to prove that the weapon was not loaded is on the defendant * * *."

On oral argument it was stated by Mr. Paillette, then appearing as Assistant Attorney General on behalf of the state in this case, that the contrary conclusion appears from a statement by him at a previous meeting of the same subcommittee on August 9, 1968 (at 13-14). We have read the minutes of that meeting.[8] We find them to be unclear, and also find that any doubt as to whether the inference was intended to be continued was removed by minutes of the subsequent meeting and by the subsequent "commentary," as quoted above.

In our view, it is immaterial to this analysis that ORS 164.405 provides that a person commits robbery in the second degree, with a lesser penalty, if he, although not actually "armed with a deadly weapon" (as required for robbery in the first degree under ORS 164.415), "represents by word or conduct that he is armed with what purports to be a dangerous or deadly weapon." The adoption of that statutory provision in 1971 was not intended to make it more difficult for the state to prove robbery in the first degree. Instead, it is clear from the minutes of the Criminal Law Revision

---

[8] Minutes, Subcommittee No. 1 of the Criminal Law Revision Commission, August 9, 1968 (at 13-14).

Commission that ORS 164.405 was intended to "strengthen existing law" by providing for intermediate situations, such as the cases in which the defendant had "a toy weapon or the threatened use of a nonexistent weapon, such as a finger in the pocket." In such cases, the defendant had "represented by word or conduct that he [was] armed with what purports to be a dangerous or deadly weapon," i.e., an actual gun, and he could be convicted of second degree robbery under ORS 164.405 without requiring proof that he was in fact armed with an actual gun. (*See* Minutes of Criminal Law Revision Commission, November 21, 1968 (at 3 and 5).)

■ For these reasons, we hold that the legislature, in adopting ORS 164.405 and 164.415, did not intend to change the then existing law, as established by prior decisions of this court, to the effect that when, as in this case, a person points a gun at another within firing range in the course of a robbery, the jury may infer that the gun was loaded. The question remains, however, whether such inference unconstitutionally shifts the burden of proof to the defendant or violates his privilege against self-incrimination.

*2. Such an inference does not shift the burden of proof to the defendant or violate his privilege against self-incrimination.*

Defendant contends, in response to the second of the questions posed by this court that:

> "The effect of allowing a jury to infer a gun is loaded because it is used in a robbery is to unconstitutionally shift the burden of proof to the defendant to negate this material fact, and force him to sacrifice his privilege not to testify in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, Sections 10 and 12 of the Oregon Constitution."[9]

---

[9] Defendants made no such contentions on trial or on appeal to the Court of Appeals, but contended only that there was no evidence that the gun was loaded, and that any such inference would be "devoid of any rational connection" between the facts and such an inference and that such an inference would be "constitutionally invalid" for that reason.

### a. *Burden of proof.*

In support of his first contention, defendant relies upon decisions by the Supreme Court of the United States holding that as a matter of constitutional due process a state must prove beyond a reasonable doubt every material element of the crime with which a defendant is charged, citing *In re Winship,* 397 US 358, 364 (1970). Defendant says that for this reason, a state "may not shift the burden of proof to the defendant by presuming that ingredient [or material element] upon proof of other elements of the offense," citing *Mullaney v. Wilbur,* 421 US 684 (1975), and quoting *Patterson v. New York,* 432 US 197, 215 (1977).

Based upon these propositions and authorities, defendant contends that

"* * * [W]here the state must rely upon an inference or presumption to prove a material element of the crime charged, this burden may not constitutionally be shifted to defendant."

"* * * * *

"In Oregon, the difference between first and second degree robbery is whether the weapon used is a deadly weapon, or only 'purports to be dangerous or deadly'. Once the state proves a gun was used in a robbery, it may then rely upon an inference to prove the gun was loaded."

"It is defendant's opinion that the fact the gun is loaded is a material element of the crime of robbery in the first degree, and under the holding of *Mullaney,* the burden of proving the gun was *not* loaded may not constitutionally be shifted to defendant." (Emphasis in original)

We may agree that in a case involving the prosecution for robbery in the first degree under ORS 164.415(1)(a), the state has the burden to prove beyond a reasonable doubt all material elements of that crime, including the fact that defendant was "armed with a deadly weapon," and that in order to establish that element of the crime the state must prove beyond a reasonable doubt that the gun was loaded. We do not,

[390]

however, agree with the remainder of defendant's analysis.

In the first place, neither the instruction given by the trial court in this case nor the prior decisions of this court approving such an instruction shifts the burden to the defendant to prove that the gun with which he was armed at the time of the robbery was unloaded. The burden to prove that the gun was loaded remains upon the state. The state, however, is not required to prove that fact by direct evidence that the gun was loaded, but may seek to prove that fact by indirect (or circumstantial) evidence, just as the state may ordinarily prove any element of a crime by indirect or circumstantial evidence. An example is the element of criminal intent.[10]

In Oregon indirect (or circumstantial) evidence is defined by statute. ORS 41.080 provides that:

"Indirect evidence is that which tends to establish the fact in dispute by proving another, and which, though true, does not of itself conclusively establish that fact, but affords an inference or presumption of its existence. * * *"

An "inference" is also defined in Oregon by statute. ORS 41.320 provides that:

"An inference is a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect."

In addition, ORS 41.330 provides that:

"An inference must be founded on:
"(1) A fact legally proved; and,
"(2) Such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business, or the course of nature."

■ Whether, in such a case, the jury would be "warranted" in making a deduction that the gun was loaded

---

[10]*See State v. Stilling,* 285 Or 293, 590 P2d 1223 (1979).

will subsequently be discussed. The point, however, is that an instruction to the jury to the effect that if, in the course of a robbery, the defendant pointed a gun at another within firing range, the jury *may* infer that the gun was loaded, does not "shift the burden of proof" to the defendant to prove the contrary.

This is a far different case than *Mullaney.* In *Mullaney,* the defendant was charged with murder under a Maine statute which provided that:

> "Whoever unlawfully kills a human being with malice aforethought, either express or implied, is guilty of murder and shall be punished by imprisonment for life."

The jury was instructed in accordance with the law of Maine

> "* * * [T]hat if the prosecution established that the homicide was *both intentional and unlawful, malice aforethought was to be conclusively implied* unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation. * * *" 421 US at 686 (Emphasis added)

In other words, the instruction did not contain a mere *permissive inference,* but *required* the jury to *conclusively imply* malice aforethought unless the defendant proved the contrary. In holding that instruction to be constitutionally invalid, the Supreme Court of the United States noted that it "affirmatively shifted the burden of proof to the defendant." 421 US at 701.

Similarly, this is not a case in which the state seeks to "shift the burden of proof to the defendant [to prove one ingredient or element of a crime] by presuming that ingredient upon proof of the other elements of the offense," as in *Mullaney.*

The instruction held to be invalid in *Mullaney* would have not only permitted but would have required the jury, upon proof of two elements of the offense ("that the homicide was both intentional and

unlawful"), to find *from the proof of those elements of the crime* that there was malice aforethought, unless the defendant proved the contrary. In this case, on the other hand, the court did not instruct the jury that it either could or must infer that defendant was armed at the time of the robbery with a "deadly weapon" solely from the fact that the state had offered proof that defendant "represented" that he was armed with a gun. In other words, the court did not instruct the jury that it could, from evidence that was only sufficient to support a charge of robbery in the second degree (i.e., that defendant "represent(ed) by word or conduct" that he was "armed with what purport(ed) to be a dangerous or deadly weapon," ORS 164.405(1)(a)), infer the ingredient necessary to make the crime robbery in the first degree (i.e., that defendant was "armed with a deadly weapon," ORS 164.415(1)(a)). Instead, the court instructed the jury that it could infer that the gun was loaded (i.e., a "deadly weapon") from the additional facts that it was "pointed at" the victim "within firing range."

Defendant contends, however, that such an inference is unwarranted. He cites decisions by the Supreme Court of the United States to the effect that there must be "[a] rational connection between the fact proved and the ultimate fact presumed," (*Tot v. United States,* 319 US 463, 467 (1942)) and that a criminal statutory presumption is "irrational" and unconstitutional "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact upon which it is made to depend" (*Leary v. United States,* 395 US 6, 36 (1969)). Based upon these authorities defendant contends that "any inference the gun was loaded because it was used in a robbery is impermissible here because such an inference is devoid of any rational connection between the facts and such inference."

It is by no means clear that the rule requiring such a "rational connection," as applied to presumptions,

[393]

applies also to inferences. Assuming, however, for the purpose of argument, that such a rule applies to inferences, we believe that there is a "rational connection" between the fact that a gun is not only "used in a robbery," but is pointed at a victim within firing range, and the ultimate fact that such a gun is loaded, because we believe that under such facts a jury could properly find with "substantial assurance" that it is "more likely than not" that the gun used under such circumstances was loaded.

As well stated by this court in *State v. Milo et al,* 126 Or 238, 244, 269 P 225 (1928):

> "* * * Under this state of facts, it was reasonable for the jury to determine, by an inference from the facts proved, that the gun was loaded: Or. L., § 794. * * * When a highwayman pokes a gun into the face of his victim and commands him to 'stick 'em up,' his actions and his words speak a language that is well understood by the victim. It is plain to the victim and to the robber that the command to 'stick 'em up,' accompanied by gun play, is a representation by the assailant that he is prepared to execute his command. It is unnecessary for the victim of a holdup to visualize the powder and the leaden ball within the highwayman's gun, or to subject his body to gunfire, in order to vindicate the law. The outlaw who attempts to rob another by putting such other in fear of death or great bodily harm through his conduct in deliberately pointing a gun at such other at close range, impliedly represents that the gun is loaded, and the proof of such conduct establishes *prima facie* that the gun so used was loaded and capable of being discharged: * * *" (Emphasis in original)

For these reasons, we hold that such an inference does not unconstitutionally shift the burden of proof to the defendant, as contended by him.

b. *Self-incrimination.*

As previously noted, defendant also contends that to permit the jury to draw such an inference violated his constitutional privilege against self-incrimination. Defendant cites decisions holding unconstitutional

ordinances or statutes which make it unlawful to have possession of burglar tools "without lawful excuse" or "unless it be shown that such possession is innocent or for a lawful purpose" or if such a person is "unable satisfactorily to account for the possession" of such tools. *State v Nales,* 28 Conn Supp 28, 248 A2d 242 (1968); *Chicago v. Mulkey et al,* 44 Ill 2d 558, 257 NE2d 1 (1970); and *Benton v. United States,* 232 F2d 341 (DC Cir 1956). Defendant then says that:

> "Here, defendant was placed on the horns of the same dilemma. Once the state had introduced evidence he was armed at the time of the alleged robbery he was faced with the Hobson's choice of remaining silent and allowing the jury to infer the gun was loaded, or taking the stand and admitting he committed robbery but that it was only second degree robbery because the gun was unloaded."

Under such statutes, however, once a defendant is shown to have been in possession of burglar tools, he is guilty as a matter of law based upon proof of that single "material element," unless he testifies on his own behalf and offers a sufficient excuse. In this case, however, as previously stated, there is no such "compulsory presumption" that a gun is loaded from the mere fact of its possession. Instead, there is no more than a permissive inference, and one based upon facts from which a jury may reasonably draw such an inference.

We do not believe that in such a case a defendant is "forced" to waive his privilege against self-incrimination any more than in many cases in which the state undertakes to prove material elements of a crime, such as criminal intent, by circumstantial evidence sufficient to provide the basis for inferences to be drawn by a jury.

Because we find that the legislature intended to continue to permit juries to infer from the fact that a gun used in a robbery was pointed at the victim within firing range that it was a loaded gun, and because we find that such an inference does not shift the burden of

[395]

proof to the defendant or violate his privilege against self-incrimination, as contended by the defendant, we affirm the decision of the Court of Appeals which, in turn, affirmed the conviction of the defendant.[11]

**LINDE, J.,** concurring.

Despite the doubts reflected in the first question to counsel quoted in the Court's opinion, the legislative history convinces me that the definition of second degree robbery in ORS 164.405 does not preclude a conviction of first degree robbery upon an unaided inference that a pointed gun was in fact loaded. I only add these few sentences to draw attention to the resulting anomaly in the definitions of robbery.

The statutes define three degrees of robbery. Actual or attempted theft by the use or threat of physical force, standing alone, is third degree robbery, a Class C felony. ORS 164.395. It becomes a Class A felony when the robber "(a) Is armed with a deadly weapon; or (b) Uses or attempts to use a dangerous weapon; or (c) Causes or attempts to cause serious physical injury to any person." ORS 164.415. However, between these extremes, robbery in the second degree is a Class B felony if the robber "[r]epresents by word or conduct that he is armed with what purports to be a dangerous or deadly weapon." ORS 164.405.

On its face, this definition of second degree robbery seemed to cover a threat with a real but empty gun. Such a threat would appear to represent that the robber is armed with what purports to be a dangerous or deadly weapon. If so, the legislature presumably would not have meant the identical threat also to suffice for an inference that the weapon was in fact

---

[11] As previously noted, it is required in Oregon by ORS 41.330 not only that an inference, to be properly drawn by a jury, must be "such a deduction" as is "warranted" in the manner provided by that statute, but that the inference "must be founded on * * * a fact legally proven." Thus, it may be contended, in such a case as this, that the inference that a gun used in a robbery and pointed at a victim within firing range was a loaded gun, must be founded upon the fact that the gun so used was a "real gun" and that such a fact was "legally proven."

loaded, raising the crime to first degree robbery, without additional support in the evidence.

The legislative history recounted in the Court's opinion, however, supports the state's position that ORS 164.405 was added specifically to deal with threats with a simulated or pretended weapon, not a real but unloaded one. The latter situation was to remain open to the inference by the factfinder, permitted under prior case law, that a pointed gun was loaded.

If it is established that the pointed gun in fact was empty, the state's position is that ORS 164.405 does not apply and that the facts constitute a third degree robbery.[1] That was counsel's explanation of the statutes at oral argument, and indeed, it is necessary to the state's argument if the prior law on first degree robbery upon mere inference is to survive the enactment of ORS 164.405. As stated, above, the Court has accepted the argument, but it does seem anomalous. It means, in effect, that a robber is better advised to display a real weapon than a toy, or mere acting skills, provided he prepares some credible evidence, in case it should be needed, that the weapon could not be fired. Moreover, since in many prosecutions the weapon itself will not be in evidence and its character must be determined from the testimony of witnesses, a jury must first be asked to decide "beyond a reasonable doubt" whether what the witness thought he saw was an operable weapon or a simulated one. If the jury concludes that it was simulated, the crime will be

---

[1] An empty gun wielded as a club might also be a "dangerous weapon" within the definition of first degree robbery, ORS 164.415(1)(b), but only if the robber "uses or attempts to use" it as such. The terms are defined in ORS 161.015 as follows:

(1) "Dangerous weapon" means any instrument, article or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury.

(2) "Deadly weapon" means any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury.

[397]

second degree robbery; otherwise, it can be either third degree or first degree, but not second. The rationality of this result as a matter of policy is open to question. So is the effect of these combinations on the defendant's choice whether or not to testify in his own defense, to say nothing of the plea-bargaining possibilities.

As for the inference that a pointed gun is in fact loaded, I cannot share the Court's enthusiasm for the 50-year-old quotation from *State v. Milo,* 126 Or 238, 244, 269 P2d 225 (1928), set forth on page 394, *supra.* As an attentive reading will show, practically the entire quotation is devoted to the proposition that when a robber commands his victim at gun point to "stick 'em up" or the like, he "impliedly represents that the gun is loaded." That much is, of course, obvious. But the final sentence of the quotation, that this implied representation "establishes *prima facie* that the gun so used was loaded," far from being "well stated," is a patent non sequitur. The fact that a thief plans to steal by threatening his victim with a gun does not say much about whether he means to be ready to commit a murder. At least that is not within my judicial notice, and I doubt that it is within the knowledge of most jurors without evidence.

Nevertheless, it has long been the law in this state that a jury may infer that a gun used to threaten a victim is in fact loaded, assuming, as the Court points out, that there is evidence from which a jury could find beyond a reasonable doubt that it was a real gun. It does not follow that the prosecution is entitled to have the trial judge instruct the jury on making such an inference, or that the judge ought to do so. On other recent occasions we have said that the inferences which may or may not be drawn from evidence can normally be left to argument without any instruction, *State v. Stilling,* 285 Or 293, 590 P2d 1223 (1979); *State v. McCormick,* 280 Or 417, 571 P2d 499 (1977). However, no constitutional obstacle has been shown to

forbid letting the jury draw the inference in the manner stated in the instruction in this case. I therefore concur in the Court's decision.

Lent, J., joins in this concurring opinion.