Argued and submitted May 2, 1983, affirmed January 11, reconsideration denied February 24, petition for review denied May 1, 1984 (297 Or 83)

## STATE OF OREGON,
*Respondent,*

*v.*

## EDDIE JOE MUSTAIN,
*Appellant.*

(21-558; CA A25676)

675 P2d 494

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals convictions for burglary in the first degree and theft in the first degree. He assigns as errors (1) the denial of his motion for acquittal, (2) the failure of the court to give an instruction on the lesser included offense of burglary in the second degree and (3) denial of his motion for mistrial.

In the first assignment, defendant contends that there was insufficient evidence to sustain a conviction of burglary in the first degree. The information alleged in material part that defendant

"* * * did unlawfully and knowingly enter and remain in a building located at the Coast to Coast store, Wheeler, Oregon, with the intent to commit the crime of theft therein, and while in the immediate flight from said building, the said defendant was armed with a deadly weapon, to wit: a Harrington & Richardson, single-shot shotgun * * *."

The evidence disclosed that a witness saw a station wagon backed up to the loading dock of the Coast to Coast store at about 1:30 a.m. and saw someone get into the driver's side of the car and speed away without lights. A police officer responded to a radio report and stopped a car matching the description given by the witness. Defendant was in the car. The officer saw a number of items with Coast to Coast stickers on them in the car. He also saw in the back of the station wagon several guns partially covered by blankets, at least one of which had a Coast to Coast sticker on the trigger guard. The shotgun described in the information was one of those guns.

Defendant moved for acquittal on the ground that the state had not introduced evidence to show that he was armed with a deadly weapon in connection with the burglary. Burglary in the first degree may be established by showing that the person who committed burglary was armed with a deadly weapon while "effecting entry or while in a building or in immediate flight therefrom." ORS 164.225(1)(a). ORS 161.015(2) provides:

" 'Deadly weapon' means any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury."

Defendant argues that the state did not prove that the shotgun described in the information was "presently capable of causing death or serious physical injury," because it did not prove that the shotgun was operable or loaded.

■ Citing cases such as *State v. Vance,* 285 Or 383, 591 P2d 355 (1979), and *State v. Armstrong,* 52 Or App 161, 628 P2d 1206, *rev den* 291 Or 662 (1981), the state contends that Oregon courts have rejected the contention that the state must prove that a firearm is operable or loaded in order to establish that it is a deadly weapon under ORS 161.015(2). Those cases do not sufficiently support the state's position. *Vance* involved robbery in the first degree which, like burglary, can be established by a showing that the defendant committed the crime while armed with a deadly weapon. ORS 164.415(1)(a). In *Vance,* the court noted that, although the state has the burden of proving every element of robbery in the first degree, it could prove by circumstantial evidence that the gun was loaded. The court approved an instruction to the effect that the jury could infer that the gun was loaded if it was pointed at another person within firing range. That the state may prove by circumstantial evidence that a gun was loaded does not imply that the state is not required to prove that it was loaded in order to establish that it was a "deadly weapon."[1]

---

[1]
"Oregon does not follow that line of case law which includes an unloaded gun in the classification of a 'dangerous weapon' within the meaning of a statute denouncing robbery while armed with a dangerous weapon. But the use of a firearm within carrying distance of the threatened victim in Oregon allows an inference that the weapon was loaded and the burden of going ahead with the evidence to prove that the weapon was not loaded is on the defendant. *State v. Noblen,* 214 Or 60, 326 P2d 139 (1958); *State v. Lanegan,* 192 Or 691, 236 P2d 438 (1951). The result is that a robbery with an unloaded gun, not used to strike with, is not robbery while armed with a dangerous weapon. This rule would place in jeopardy a definition of a 'deadly' weapon as one specifically designed or *readily adaptable* to produce serious bodily injury. A firearm is specifically designed for such a purpose and although unloaded is readily adapted to that purpose by loading it. Therefore, to continue the necessity of the firearm being loaded before it would be considered a 'deadly' weapon within the meaning of the 'armed robbery' statute, it is necessary to adopt a definition which demands such a result, but which also does not disturb the inference that the gun is loaded. * * * The requirement of 'present capability' resolves the problem of an 'unloaded' gun. If a gun has a shell in firing position it is 'loaded' and presently capable of causing death or serious physical injury and, hence, a deadly weapon. Likewise, a gun that has a shell in the magazine or chamber would be within the purview of the definition of deadly weapon because, for all practical purposes, the weapon is

■ There was no direct evidence that the shotgun was loaded. The issue is whether there was sufficient indirect evidence for the jury to infer that the Harrington and Richardson shotgun met the statutory test. We conclude that there was not. The most that the evidence established with respect to the shotgun was that at the relevant time defendant was in possession of an operable but unloaded shotgun. There was no evidence that there was any ammunition in the vehicle so that the shotgun could have been readily loaded by defendant. Unlike the situation in which a person has threatened someone with a gun, there was no evidence from which it could rationally be inferred that the shotgun was "presently capable" of causing death or injury. We stress that we are not holding that the only indirect evidence from which a jury may infer that a firearm is a "deadly weapon" is evidence that it was pointed at a person within firing range. There are many conceivable facts which could give rise to an inference that a firearm was deadly at the relevant point in time, but the state offered evidence of none here. The court erred in denying the motion on the ground stated.

Defendant acknowledges that after his arrest the police found a loaded pistol under the passenger's seat in the car. In its rebuttal argument and here the state argues that the pistol may be used to establish that defendant was armed with a deadly weapon.

■ The information alleged that defendant was armed with a Harrington and Richardson shotgun. Defendant argues that there was a fatal variance between the allegations and the proof. When a variance between the allegations in the charging instrument and the proof is claimed, the test is whether the allegations in the charging instrument misled the defendant and prejudiced him in the preparation of his defense. *State v. Hanson/Hughes,* 14 Or App 586, 513 P2d 1202, *rev den* (1973).

> "The rule of variance is based upon providing an accused against surprise in making his defense and to prevent him from again being put in jeopardy for the same offense." *State v. Anderson,* 241 Or 18, 21, 403 P2d 778 (1965).

---

'loaded' and has the same present capability. * * *" Commentary, Oregon Criminal Code of 1971, 2-3. (Emphasis in original.)

Defendant was potentially aware through discovery that the state had evidence of the pistol. *See State v. Sanders,* 280 Or 685, 690, 572 P2d 1307 (1977). The state did not indicate any intention to use the loaded pistol to establish the "deadly weapon" element of the charge until its closing rebuttal argument. Defendant did not object to evidence concerning the pistol, nor did he object to the state's argument regarding the pistol or otherwise preserve any contention that evidence of the pistol should not be considered by the jury as a material element of the crime. On appeal, he does not make any claim that he was prejudiced by the state's rebuttal argument or the variance between the allegations of the information and the evidence respecting defendant's possession of a deadly weapon. Because the issue was not preserved, we decline to rule on whether defendant was actually prejudiced by the receipt of the evidence. *See State v. Braley,* 224 Or 1, 355 P2d 467 (1960); *State v. Blake,* 53 Or App 906, 633 P2d 831 (1981), *dismissed* 292 Or 486 (1982).

■　　　Although we conclude that defendant is correct in his contention that the state failed to prove that the shotgun described in the information was a deadly weapon, there was evidence, (*i.e.,* the pistol) which the jury could consider and which supports the charge of burglary in the first degree. The motion for judgment of acquittal was properly denied, albeit for a different reason from that addressed by the trial court.

■　　　Defendant assigns as error the court's refusal to instruct the jury regarding the lesser included offense of burglary in the second degree. Neither the transcript nor the trial court file discloses that defendant requested such an instruction or what the wording of any requested instruction was. The issue is not properly before us. *State v. John,* 37 Or App 439, 587 P2d 502 (1978).

■　　　Defendant also contends that the trial court erred in denying his motion for mistrial. On direct examination defendant had testified that he had been convicted of three burglaries, in Oregon City, Spokane, Washington, and Coeur d'Alene, Idaho. The prosecutor asked on cross-examination if defendant had been convicted of burglaries in Newport, Coquille, and Oregon City. He was reading from a conviction report involving another individual. After a discussion outside the presence of the jury, the prosecutor noted before the jury

that he had been mistaken about the locations and asked defendant the actual location of his prior convictions.[2] Defendant argues that the questioning improperly suggested to the jury that he had arrests or convictions other than the three properly in evidence. We conclude that the questions were unlikely to have induced an improper inference in the minds of the jurors, that defendant was not denied a fair trial and that the trial court did not abuse its discretion in denying the motion for mistrial. *See State v. Wolfe,* 56 Or App 795, 799, 643 P2d 404 (1982).

Affirmed.

---

[2] The pertinent portions of the transcript are as follows:

"BY MR. WASSON:

"Q Mr. Mustain, with regard to some questions that your lawyer asked you when he first started asking you questions about your prior difficulties with the law, isn't it a fact that you were convicted of burglary on two prior occasions?

"A [Mr. Mustain:] Yes.

"Q Was it two prior occasions or three, sir?

"A Three, sir.

"Q Three prior occasions?

"A Yes.

"Q For burglary?

"A (Nods head affirmatively.)

"Q Was that in Newport, Coquille, and Oregon City?

"A No, just Oregon City.

"Q Okay.

"MR. MOELLER: Your Honor, may I bring something to the attention of the Court? I think it would require the jurors to be —

"THE COURT: Jurors, please return to the jury room.

"* * * * *

"CONTINUED CROSS-EXAMINATION

"BY MR. WASSON:

"Q Mr. Mustain, I think I had the towns where you were convicted of those three burglaries wrong, didn't I?

"A Yes, sir.

"Q What were the towns where you were convicted?

"A Coeur d'Alene, Idaho; Spokane, Washington; Oregon City, Oregon."