Argued and submitted February 28, affirmed May 29, 2003

STATE OF OREGON,
*Respondent,*

*v.*

PATRICK JOSEPH RIEHL,
*Appellant.*

99-1952; A108601

69 P3d 1252

Monica L. Finch, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E.

Groom, Acting Executive Director, Office of Public Defense Services.

Holly A. Vance, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

The state charged defendant with, among other things, two counts of first-degree robbery. At trial, however, the court instructed the jury that it could consider second-degree robbery a lesser-included offense of the crimes charged. The jury found defendant guilty of two counts of second-degree robbery, and he was sentenced on those convictions. On appeal, he argues that the trial court erred in instructing the jury that it could consider second-degree robbery a lesser-included offense of the first-degree robbery counts with which he had been charged. We affirm.

We review the trial court's delivery of a lesser-included offense instruction for errors of law. *State v. Lee*, 174 Or App 119, 125, 23 P3d 999, *rev den*, 332 Or 559 (2001). An offense is a lesser-included offense of a crime charged in either of two instances: (1) the elements of the lesser offense necessarily are included in the greater offense, or (2) the elements of the lesser offense are expressly alleged in the charging instrument. *State v. Cook*, 163 Or App 578, 581-82, 989 P2d 474 (1999). In *State v. Zimmerman*, 170 Or App 329, 334, 12 P3d 996 (2000), we held that not all of the elements of second-degree robbery are necessarily included in the elements of first-degree robbery. Thus, the only question is whether the allegations of the indictment state all the elements of second-degree robbery.

The state charged defendant as follows:

"ROBBERY IN THE FIRST DEGREE WITH A FIREARM
"COUNT 1 (ORS 164.415/161.610)
"Class A Felony

"The said defendant on or about the 6th day of August, 1999, in the County of Clackamas, State of Oregon, did unlawfully and knowingly threaten the immediate use of physical force upon Rodger Parr, and was armed with a deadly weapon, while in the course of committing theft of property, with the intent of preventing resistance to the said defendant's taking and retention of the said property, and during the commission of this felony, the defendant used and threatened the use of a firearm, said act of defendant being contrary to the statutes in such cases made and

provided, and against the peace and dignity of the State of Oregon."

The allegations of Count 2 were identical in all respects save the name of the victim.

The elements of second-degree robbery are that, in the course of committing robbery, the defendant "[r]epresents by word or conduct that [he] is armed with what purports to be a dangerous or deadly weapon[.]" ORS 164.405(1)(a).

Defendant argues that the indictment fails to allege the elements of second-degree robbery for two reasons. First, he argues, the indictment fails to allege that he "represent[ed]" that he was armed. Second, he argues, the indictment fails to allege that he was armed with what merely "purport[ed]" to be a dangerous or deadly weapon. Relying on a concurring opinion in *State v. Vance*, 285 Or 383, 591 P2d 355 (1979), he argues that the legislature intended second-degree robbery to address only instances in which an *unarmed* person represents that he or she is armed. In this case, he argues, the indictment fails because it alleges that he in fact was armed with a deadly weapon.

In response to the first argument, the state argues that, in alleging that defendant "threatened the use of a firearm," the indictment adequately satisfied the element that a defendant "represent[ ]" that he is armed. In response to the second argument, the state argues that nothing in the text or history of the statute or the majority's opinion in *Vance* suggests that second-degree robbery is limited to cases in which the actor is unarmed. In any event, the state argues, the indictment fairly may be read as alleging alternatively that defendant was armed and that he merely threatened the use of a firearm. Either way, the state concludes, the indictment alleges the elements of second-degree robbery.

We begin with whether the indictment alleges that defendant "represent[ed]" that he was armed. In *Lee*, 174 Or App at 126, we addressed the meaning of the statutory requirement of representation:

"[A] defendant 'represents' to the victim that he or she is armed only if the defendant actually communicates that

fact to the victim. Thus, to commit second-degree robbery, the defendant must intend to cause the victim to be aware of the fact that he or she is armed with a dangerous weapon."

(Citation omitted.)

■ In this case, the indictment alleges that defendant "threatened" the use of a firearm. In *State v. Hall*, 327 Or 568, 573, 966 P2d 208 (1998), the Supreme Court addressed the meaning of the term "threaten" as the term is used in the statute defining the elements of third-degree robbery:

"[T]he dictionary defines the word 'threaten' as follows:

" '**1** : to utter threats against: promise punishment, reprisal, or other distress to * * * **2** * * *: to charge under pain of punishment : WARN * * * **3** : to promise as a threat: hold out by way of menace or warning * * * **4a** : to give signs of the approach of (something evil or unpleasant): indicate as impending: PORTEND * * * **b** : to hang over as a threat : MENACE * * * **5** : to announce as intended or possible * * *.' *Webster's Third New Int'l Dictionary*, 2382 (unabridged ed 1993).

"The dictionary definition indicates that the act of threatening another person can be *explicit* (such as uttering threats) or *implicit* (such as giving signs of the approach of something evil or unpleasant). That conclusion is supported by examining the dictionary definition of the noun 'threat,' which is used repeatedly in the definition of the verb threaten. A 'threat' is:

" '1: an indication of something impending and usu. undesirable or unpleasant * * * as a: an expression of an intention to inflict evil, injury, or damage on another usu. as retribution or punishment for something done or left undone * * * b: expression of an intention to inflict loss or harm on another by illegal means and esp. by means involving coercion or duress of the person threatened ([threats] inducing fear of bodily harm are often cause of legal action even in the absence of overt violence) 2: something that by its very nature or relation to another threatens the welfare of the latter * * *.' *Id*.

"Like the act of threatening, a threat can be *explicit* (an expression of an intention to inflict harm or loss on another)

or *implicit* (something that by its nature or relation to another announces that a person's welfare is in danger)."

(Emphasis in original.) All of the relevant definitions of "threaten" and its noun variant "threat" necessitate communication of a fact. Thus, in the ordinary sense of the term, when one threatens use of a firearm, one necessarily communicates that he or she is armed. That is sufficient to satisfy the element of representation in ORS 164.405. We therefore reject defendant's first argument and turn to whether the allegations of the indictment allege that defendant represented that he was armed "with what purports to be a dangerous or deadly weapon." ORS 164.405.

Ordinarily, the word "purport" means "to convey, imply, or profess outwardly (as meaning, intention, or true character)." *Webster's* at 1847. It can refer to having the "specious appearance of being, intending, claiming (something implied or inferred)," but the word is not limited to that meaning. *Id.* Thus, the legislature has used the term to refer to a specious claim. *See, e.g.,* ORS 165.002(5) (to "falsely complete" an instrument is to alter it "so that the complete written instrument falsely appears or purports to be in all respects an authentic creation"). It also has used the term to refer to what may be an entirely accurate claim. *See, e.g.,* OEC 803(26)(a) (describing exception to hearsay rule for "[a] statement that purports to narrate, describe, report or explain an incident of domestic violence").[1]

In *Vance*, the Supreme Court did not address the question whether the legislature intended to use the term in one sense or the other. At issue in that case was whether the state had proved the elements of *first*-degree robbery. The state had established that the defendant had committed a

---

[1] The courts similarly use the term "purports" to describe what has been asserted inaccurately, *see, e.g., League of Oregon Cities v. State of Oregon,* 334 Or 645, 673, 56 P3d 892 (2002) ("although the text of Measure 7 purports to change only Article I, section 18, its inclusion of the exception set out in subsection (c) nonetheless changes rights currently guaranteed by Article I, section 8"), or to describe what has been asserted, whether accurately or not, *see, e.g., State v. Joslin,* 332 Or 373, 385, 29 P3d 1112 (2001) ("when police receive from a third party an invocation or legal advice respecting Article I, section 12, in behalf of a suspect in custody, in which the third party purports to be speaking for a lawyer hired in the suspect's behalf, the police are bound to honor that invocation").

robbery while armed with a handgun. The defendant objected that, without proof that the gun actually was loaded, the state had failed to prove that what he possessed was in fact a dangerous or deadly weapon. The court held that the jury could infer that the gun was loaded and that, aided by that inference, the state had proved its case. 285 Or at 387-88.

Justice Linde concurred to note, among other things, an apparent anomaly in the statute. According to Justice Linde, "on its face," the second-degree robbery statute appears to cover a threat with an actual, but unloaded, gun. Specifically, Justice Linde acknowledged that brandishing an unloaded gun constituted representing that the actor is armed with what "purports" to be a dangerous or deadly weapon. 285 Or at 397 (Linde, J., concurring). He cautioned, however, that the legislative history could be read to suggest that second-degree robbery has a more limited scope. According to Justice Linde, it is apparent from the legislative history that the legislature intended second-degree robbery to cover cases in which the actor wields a simulated, but not an actual, weapon. So read, he cautioned, the statute leads to absurd possibilities:

> "It means, in effect, that a robber is better advised to display a real weapon than a toy, or mere acting skills, provided he prepares some credible evidence, in case it should be needed, that the weapon could not be fired. Moreover, since in many prosecutions the weapon itself will not be in evidence and its character must be determined from the testimony of witnesses, a jury must first be asked to decide 'beyond a reasonable doubt' whether what the witness thought he saw was an operable weapon or a simulated one. If the jury concludes that it was simulated, the crime will be second degree robbery; otherwise, it can be either third degree or first degree, but not second. The rationality of this result as a matter of policy is open to question."

*Id.* at 397-98 (Linde, J., concurring).

In *State v. Neely*, 87 Or App 706, 743 P2d 1141 (1987), this court directly addressed the anomaly that Justice Linde had noted in *Vance*. In that case, the defendant had been charged with second-degree robbery. The state proved that defendant lifted his jacket during a robbery to expose the

grip of a real pistol that had been thrust in his belt and ordered a clerk to give him money. The defendant, citing Justice Linde's concurring opinion in *Vance*, argued that, because he was armed with an actual pistol, he could not be convicted of second-degree robbery. We disagreed, holding that the fact that the defendant possessed an actual weapon did not preclude a conviction for second-degree robbery. We agreed with the concurrence in *Vance* that it would indeed be anomalous to conclude that the possession of an actual weapon would support a conviction for third-degree robbery, but not second-degree robbery. We concluded, however, that nothing in the wording of the statute or its history supports the notion that the legislature intended such an absurd result. *Id.* at 712.

Defendant insists that the legislative history of ORS 164.405(1)(a) supports the notion that second-degree robbery may be committed only with a simulated weapon and that *Neely* was wrongly decided. In particular, defendant relies on portions of the history to the effect that the statute was intended to cover types of robbery in which the actor is unarmed.

Assuming for the sake of argument that it is appropriate to examine the legislative history in this case, *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (legislative history may be consulted only if the text is ambiguous), we do not read it quite as broadly as does defendant. The wording of ORS 164.405(1)(a) derives from 1971 revisions to the Criminal Code. The official commentary adopted by the Criminal Law Revision Commission explains that ORS 164.405(1)(a)

> "is intended to cover the type of robbery in which the actor is, in fact, unarmed, but conveys to the victim the impression that he has a weapon. While such a threat may not create any greater risk to the person of the victim, it does heighten the terror in the victim's mind and also, is persuasive in overcoming resistance to the robbery. This paragraph would make it second degree robbery if the robber uses a note, a 'hand-in-pocket' technique or a fake weapon to convey the impression that he is armed with a 'dangerous or deadly weapon.'"

Commentary to Criminal Law Revision Commission Proposed Criminal Code, Final Draft and Report § 150, 155 (July 1970).

That portion of the report certainly makes clear that the legislature intended that ORS 164.405(1)(a) cover instances in which the actor is unarmed. But it is illogical to conclude that the legislature therefore intended that the statute cover *only* such instances. We have searched the legislative history in vain for any expression of that understanding of the statute's effect. To the contrary, the legislative history reflects a concern about an actor creating an impression that he or she is armed because that impression "heighten[s] the terror in the victim's mind and also, is persuasive in overcoming resistance to the robbery." The legislature's point appears to be the creation of the terror, not the fact that the means of creating it is a simulated, as opposed to a real, weapon.

At best, the legislative history is equivocal. When that is so, we are required to resort to relevant maxims of statutory construction. *PGE*, 317 Or at 612. One such maxim is that we may assume that the legislature did not intend to accomplish an absurd result. *State v. Vasquez-Rubio*, 323 Or 275, 282-83, 917 P2d 494 (1996). In this case, giving the statute the construction that defendant suggests would mean, as Justice Linde cautioned in *Vance*, that the law would treat more harshly an actor who commits robbery with a toy than it would one who commits the same crime with an actual deadly weapon. We can envision no rational policy that is advanced by that result. In short, we adhere to our decision in *Neely* and reject defendant's contention that second-degree robbery occurs only if the actor is unarmed.

Affirmed.