Submitted March 10, reversed December 16, appellant's and respondent's joint petition for reconsideration filed December 30, 2015, allowed by opinion February 18, 2016
See 276 Or App 491, 369 P3d 99 (2016)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**JOSHUA VICTOR PITTMAN,**
*Defendant-Appellant.*

Marion County Circuit Court
13C41974; A154792

365 P3d 142

Peter Gartlan, Chief Defender, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Lysne, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

**DEVORE, J.**

Defendant was charged with first-degree robbery for stealing clothing and shoes from a department store, with the aid of a pair of pliers. The trial court acquitted defendant of first-degree robbery, ORS 164.415,[1] but convicted defendant of second-degree robbery, ORS 164.405(1)(a), as a lesser-included offense.[2] Defendant challenges the conviction for second-degree robbery. He argues that the court erred in determining that second-degree robbery, for which he was not tried, constituted a lesser-included offense of first-degree robbery, given the way in which he was indicted. We review for legal error, *State v. Riehl*, 188 Or App 1, 69 P3d 1252 (2003), and reverse. Our decision on that issue makes it unnecessary to address defendant's other assignments of error.

The facts are undisputed. Phillips, a loss prevention supervisor at a department store, noticed defendant and another man acting suspiciously. Phillips saw defendant use a pair of pliers to cut through and remove a hard plastic surveillance device from a pair of shoes and put the shoes and some other items of clothing into his backpack. Defendant left the store without paying. Phillips followed defendant and saw that he was outside with the other man. When Phillips approached, defendant shouted, "Get him now[,]" waited for a few seconds, and began to run away. Phillips called

---

[1] ORS 164.415 provides, in part:

"(1) A person commits the crime of robbery in the first degree if the person violates ORS 164.395 [third-degree robbery] and the person:

"(a) Is armed with a deadly weapon;

"(b) Uses or attempts to use a dangerous weapon; or

"(c) Causes or attempts to cause serious physical injury to any person."

[2] ORS 164.405 provides, in part:

"(1) A person commits the crime of robbery in the second degree if the person violates ORS 164.395 [third-degree robbery] and the person:

"(a) Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or

"(b) Is aided by another person actually present."

In turn, "dangerous weapon" is defined as "any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury." ORS 161.015(1).

9-1-1 as he pursued defendant on foot. Defendant came to a stop, turned around, took "two hard steps" toward Phillips, removed the pliers from his pocket, and said, "Get the hell away from me."[3] Defendant held the pliers at his side, close to his body below the waist from a distance of approximately 10 to 12 feet. His elbow was slightly bent with the pliers pointing toward Phillips.

Defendant attempted to flee again, and Phillips continued pursuit. Eventually, defendant stopped running, and Phillips told him to return the stolen property. Defendant removed items from his backpack but continued walking away into an alley as he threw the clothing onto the ground. May, a loss prevention officer for the department store, arrived and retrieved the clothing. Defendant came back through the alley toward May "in an aggressive manner" with the pliers still in hand.[4] He walked past May and continued to flee. A responding police officer caught and arrested defendant before he could get away.

Defendant was charged by indictment with first-degree robbery, Count 1, and second-degree robbery, Count 2. Prior to trial, upon the state's motion, the trial court dismissed Count 2. As to Count 1, the indictment alleged that

"[t]he defendant, on or about April 2, 2013, in Marion County, Oregon, did unlawfully and knowingly while in the course of committing theft, with the intent of preventing and overcoming resistance to defendant's taking of property and retention of the property immediately after the taking, threaten the immediate use of physical force upon Kourtney May and John Phillips and use and attempt to use a dangerous weapon."

Defendant waived his right to a jury and proceeded with a bench trial.

At the close of the state's case, defendant moved for a judgment of acquittal. He argued that "there is no evidence that [defendant] threatened the use [of physical force]." He

---

[3] Phillips testified at defendant's bench trial that he felt threatened when he saw defendant gripping the pliers and stepping toward him.

[4] May saw that defendant had the pliers in his hand as he came toward her, but, at the time, she did not know what the object was and believed that it could have been a weapon.

emphasized that the record did not reflect any sort of threatening motion toward Phillips or May, and, regardless, he was not within striking distance of Philips or May at any point while he held the pliers. Defendant further contended that there was no evidence that the pliers were a dangerous weapon in accordance with the statutory definition, which requires that the instrument is "readily capable of causing death or serious physical injury." ORS 161.015(1). The state responded that the pliers could be considered a dangerous weapon in light of Phillips's testimony that he felt threatened. The court denied the motion.

During closing arguments, the trial court asked defendant if he was requesting the court to consider any lesser-included offenses. Defense counsel replied, "Yes. And I always have trouble with this[,]" but that the court should consider third-degree theft as a lesser-included offense. However, the state contended that second-degree robbery is a lesser-included offense "as charged in this case" because defendant wielded the pliers in a manner to convince Phillips and May "that it was dangerous." The state further contended, "If it is not a robbery in the first degree * * * there is a case * * * on point on this exact issue I can show your Honor that robbery two is a lesser-included [offense of] robbery in the first degree as charged in this case."

The trial court acquitted defendant of first-degree robbery. The court determined that a pair of pliers could be used as a dangerous weapon, based on the testimony in the case that a reasonable person would have believed, as May had believed, that defendant was carrying "a weapon of some kind * * * [regardless] whether they had a clear focus of what it was or not."[5] The court nevertheless ruled that the evidence did not meet the elements of first-degree robbery, because defendant was not capable of causing death or serious physical injury from where he brandished the pliers, 10 to 12 feet away from where Phillips had been standing. As to the offense of second-degree robbery, the court explained,

---

[5] As to any purported threat made to May, the court ruled that defendant had already relinquished the stolen property at the time of his encounter with her and that "any display of a weapon or a threat must be done at the time when the defendant has and is trying to retain the property or is trying to take the property."

"Robbery one and robbery two have already been brought up. * * * It is alleged here that the defendant used or attempted to use * * * a dangerous weapon. Robbery in the second degree would cover representing by words or conduct that the defendant was armed with what was purported to be a dangerous weapon.

"As [the prosecutor] alluded to in his closing argument, I believe that the evidence is sufficient to find beyond a reasonable doubt that the defendant committed robbery in the second degree, because I don't have to find that [the pair of pliers] is a dangerous weapon or that it is not, but simply that it's displayed in a manner under the circumstances I've already described for the purposes I've already described in a manner to purport to be a weapon.

"* * * * *

"I will find you * * * not guilty of robbery in the first degree, and guilty of the lesser-included offense of robbery in the second degree for the reasons that I have outlined."

Defendant did not object to the court's ruling or directly argue that second-degree robbery was not a lesser-included offense. He was sentenced to 70 months of incarceration and 36 months of post-prison supervision.

On appeal, defendant argues that the trial court erred by entering a judgment of conviction for second-degree robbery because second-degree robbery is not a lesser-included offense of first-degree robbery, as it was alleged in the indictment in this case. *State v. Zimmerman*, 170 Or App 329, 12 P3d 996 (2000). The state first responds that the issue is unpreserved, because defendant did not object to the state's request that the court consider second-degree robbery as a lesser-included offense or otherwise alert the court that he could not be convicted of second-degree robbery.

We agree with the state and conclude that defendant's argument is unpreserved. Generally, assignments of error that are not raised in the trial court will not be considered on appeal. ORAP 5.45. To preserve an argument for appellate review, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error

immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Important policy considerations support the preservation rule, in particular, because it "'gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal.'" *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011) (quoting *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008)). Further, "the rule also ensures fairness to opposing parties, by requiring that 'the positions of the parties are presented clearly to the initial tribunal' so that 'parties are not taken by surprise, misled, or denied opportunities to meet an argument.'" *Walker*, 350 Or at 548 (quoting *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995)).

In this case, the trial court afforded the parties an opportunity to propose lesser-included offenses for its consideration. At that time, the state contended that the court could find defendant guilty of second-degree robbery. Defendant made no objection to the state's argument and did not otherwise alert the court that it could not find defendant guilty of second-degree robbery based on the text of the indictment.[6] The trial court had no opportunity to avoid making an error or to correct it. The state had neither the opportunity to respond nor the opportunity to propose any other lesser-included offenses for the court's consideration, such as third-degree robbery. Accordingly, we conclude that the issue is unpreserved.

Defendant alternatively argues that we review his unpreserved assignment as plain error and exercise our discretion to correct it. We may review an unpreserved assignment of error as "an error of law apparent on the record" under ORAP 5.45(1) if certain conditions are met: (1) the error is one of law; (2) the error is "apparent," that is, the

---

[6] Defendant argues that the matter is preserved, despite the absence of an objection, in light of this court's consideration of a preservation question in *State v. Andrews*, 174 Or App 354, 27 P3d 137 (2001), *overruled in part on other grounds by State v. Rutley*, 202 Or App 639, 123 P3d 334 (2005), *aff'd in part and rev'd in part*, 343 Or 368, 171 P3d 361 (2007). *Andrews* is inapposite. Unlike the present record, in *Andrews*, the defendant "raised the precise matter *** disputed on appeal" during his closing argument, and the trial court "expressly decided that question." *Id.* at 359.

legal point is obvious and is not reasonably in dispute; and (3) the error appears "on the face of the record," that is, "[w]e need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Where those conditions are satisfied, we must determine whether to exercise our discretion to reach the error and correct it. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991).

In this case, defendant contends that the error is plain because this court's decision in *Zimmerman*, 170 Or App at 329, "is on all fours with and controls the outcome of this case." In *Zimmerman*, we addressed whether the second-degree robbery element of representing to be armed with a dangerous or deadly weapon is necessarily subsumed in the elements of first-degree robbery. We concluded that "[a] comparison of the elements of the two crimes makes clear that second-degree robbery is not a lesser included offense of first-degree robbery" unless the "accusatory instrument recite[s] sufficient facts to satisfy each element of second-degree robbery." *Id.* at 334. In that case, the indictment alleged that the defendant "'did use and attempt to use a dangerous weapon,'" but it failed to allege any fact that would have required the state to prove that he represented to the victim that he was armed with a dangerous weapon.[7] *Id.* Here, defendant contends that the indictment presents "the same words that were at issue in the indictment in *Zimmerman*" and, therefore, there is no reasonable dispute regarding the trial court's error. The state responds that the trial court did not err in light of two more recent opinions, *Riehl*, 188 Or App 1 (concluding that the indictment alleged that the defendant "represented" that he was armed and rejecting the defendant's argument "that second-degree robbery occurs only if the actor is unarmed"), and *State v.*

---

[7] The indictment in *Zimmerman* alleged:

"'The said defendant, on or about October 24, 1997, in the County of Multnomah, State of Oregon, did unlawfully and knowingly use and threaten the immediate use of physical force upon [the victim], and did use and attempt to use a dangerous weapon, to wit: a knife, while in the course of committing and attempting to commit theft of property * * *.'"

170 Or App at 331.

*Osborne*, 242 Or App 85, 90, 255 P3d 513 (2011) (the defendant's threat to use a wielded knife satisfies the element of first-degree robbery that a defendant "uses or attempts to use a dangerous weapon" in the commission of that offense).

We first address the argument that the trial court plainly erred. The asserted error does present the same issue decided in *Zimmerman*—that is, that second-degree robbery is not a lesser-included offense of first-degree robbery but "may be treated as a lesser included offense of first-degree robbery if the accusatory instrument recited sufficient facts to satisfy each element[, of second-degree robbery." 170 Or App at 334. We agree with defendant that the indictment in this case contains the same operative text as the indictment in *Zimmerman* and, therefore, requires the same conclusion. As in *Zimmerman*, the indictment in this case does not recite facts sufficient to satisfy each element of second-degree robbery because it fails to allege any fact that would have required the state to prove that defendant represented to the victim that he was armed with a dangerous weapon. *Id.* Therefore, the legal error in this case is apparent on the record and is free from competing inferences.

To the extent that the state contends that *Zimmerman* must be "overruled (or distinguished) in light of *Osborne* and *Riehl*[,]" and is therefore not plain error, we disagree. Our conclusions in those cases simply do not bear on our clear holding in *Zimmerman* that the charging instrument must allege facts sufficient to satisfy each element of second-degree robbery and that, as alleged, the indictment "said nothing about defendant representing to the victim or anyone else that he was armed with a dangerous weapon." *Id.* Indeed, in *Riehl*, we reaffirmed our holding in *Zimmerman* that "not all of the elements of second-degree robbery are necessarily included in the elements of first-degree robbery." 188 Or App at 3 (citing *Zimmerman*, 170 Or App at 334).[8] The charges in *Osborne* were even more

---

[8] In *Riehl*, we explained that, consistent with *Zimmerman*, "the only question is whether the allegations of the indictment state all the elements of second-degree robbery." 188 Or App at 3. The indictment in *Riehl*, unlike the indictment in *Zimmerman*, had alleged that defendant "'threatened' the use of a firearm" and therefore included the element that the defendant "represented" to the victim that he was armed. 188 Or App at 5.

readily distinguishable and warrant no discussion here. The state's misplaced reliance on *Riehl* and *Osborne* does not create a reasonable dispute as to the legal point in question. The trial court's error was plain.

The remaining question is whether this court should exercise its discretion to correct the error, and we conclude that doing so is appropriate. The factors that bear upon our exercise of discretion include

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Ailes*, 312 Or at 382 n 6. The Supreme Court has identified additional considerations, including whether there was a "possibility that [a] defendant made a strategic choice not to object" and the "interest of the judicial system in avoiding unnecessary repetitive sentencing proceedings." *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007).

Here, those factors weigh in favor of exercising our discretion to correct the trial court's error. First, the error is grave, because it "misstates the nature and extent of defendant's conduct" as he was charged and "could have significant implications with regard to any future calculation of his criminal history." *State v. Valladares-Juarez*, 219 Or App 561, 564, 184 P3d 1131 (2008) (exercising discretion to correct error in failing to merge kidnapping convictions). Defendant is serving a 70-month period of incarceration for a crime that was not alleged against him. Second, the record reveals that defense counsel's failure to object was not a strategic decision. When asked for his argument, counsel admitted that he "always [has] trouble with" lesser-included offenses and offered no argument against the state's erroneous claim that "there is a case * * * on point on this exact issue * * * that robbery two is a lesser-included [offense of] robbery in the first degree as charged in this case." Third, the general rule requiring preservation of error was served

in another way. That is, the trial court received the state's argument that case law supported its position that second-degree robbery was a lesser-included offense, as well as defendant's suggestion of an alternative lesser-included offense, third-degree theft. Finally, the ends of justice are duly served by ensuring that a criminal defendant is not convicted of an offense that was not alleged against him and that does not constitute a lesser-included offense of that which was charged. *State v. Camacho-Alvarez*, 225 Or App 215, 217, 200 P3d 613 (2009) ("[T]he ends of justice are served by convicting and sentencing defendant according to the law."). Accordingly, we exercise our discretion to correct the error and reverse.

Reversed.