Argued August 21, affirmed September 14, petition for rehearing denied October 18, petition for review denied December 11, 1973

STATE OF OREGON, *Respondent, v.* JOHN HOWARD HANSON (No. 39607), *Appellant.*

STATE OF OREGON, *Respondent, v.* RONALD WARD HUGHES (No. 39606), *Appellant.*

513 P2d 1202

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for appellants. With him on the brief were Gary D. Babcock, Public Defender, and Robert C. Cannon, Deputy Public Defender, Salem.

*Doyle L. Schiffman,* District Attorney, Roseburg, argued the cause for respondent. With him on the brief was Brian R. Barnes, Deputy District Attorney, Roseburg.

Before LANGTRY, Presiding Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

Defendants were convicted by jury of robbery in the first degree in violation of ORS 164.415 and received five-year sentences. They appeal, asserting that the trial court should have granted a motion for a

judgment of acquittal and also erred in instructing the jury on the use of a "dangerous" weapon when defendants were charged with use of a "deadly" weapon.

The indictments against each of the defendants were identical and read, in pertinent part, as follows:

> "The said JOHN HOWARD HANSON [RONALD WARD HUGHES] on or about the 8th day of February A.D. 1973, in the said County of Douglas and State of Oregon, then and there being, did unlawfully and knowingly threaten the immediate use of physical force upon Jimmy Clark Butler, by being armed with a deadly weapon, to-wit: a knife, and did attempt to use said deadly weapon to threaten the said victim, Jimmy Clark Butler, while in the course of committing theft of property, to-wit: cash, lawful money of the United States, in the amount of Eighty and no/100 Dollars ($80.00), with the intent of preventing resistance to the said defendant's taking and retention immediately after the taking of said property, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

██ ██ ORS 164.415 (1) provides that the crime of robbery in the first degree can be committed in any of several ways:

> "(1) A person commits the crime of robbery in the first degree if he violates ORS 164.395 [robbery in the third degree] and he:
>
> "(a) Is armed with a deadly weapon; or
>
> "(b) Uses or attempts to use a dangerous weapon * * *
>
> "* * * * * *"

With regard to paragraphs (a) and (b), it is clear that if the accused is armed with a "deadly" weapon while violating ORS 164.395, that fact in itself is sufficient to sustain a conviction of first degree robbery;

there is no need to allege and prove that the deadly weapon was used. On the other hand, being armed with a "dangerous" weapon is not sufficient in itself to sustain a conviction of first degree robbery; if the state chooses to proceed under that theory, it must allege and prove not only that the accused was armed with the weapon, but also that the accused used or attempted to use it.

The terms "dangerous weapon" and "deadly weapon" are defined in ORS 161.015. ORS 161.015 (1) defines "dangerous weapon" as

"* * * any instrument, article or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury."

By contrast, ORS 161.015 (2) defines a "deadly weapon" as

"* * * any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury."

In this case, the weapon used was a pocketknife. Apparently the state, finding it difficult to predict whether the knife would turn out to be a "deadly" weapon or a "dangerous" weapon, decided to protect itself by alleging elements of both paragraphs (a) and (b) of ORS 164.415 (1) in the indictment.

ORS 132.560 provides in part that:

"The indictment must charge but one crime, and in one form only, except that:

"(1) Where the crime may be committed by the use of different means, the indictment may allege the means in the alternative.

"* * * * *"

■ Thus, where the state is justifiably uncertain as to what its proof will show, a proper procedure would be to allege in separate counts the different means by which the crime might have been committed. By failing to utilize this obvious statutory procedure, the state here created needless problems for itself and may have rendered the indictment subject to demurrer under ORS 135.630 (2) or (3),① had the defendants chosen to demur. However, defendants did not demur or in any other way indicate that it was not clear to them what they were required to defend against, so we may assume that at the time of trial defendants were adequately apprised of what the state had to prove to make its case.

■ At trial, the state introduced evidence tending to establish that defendants, while committing the type of acts proscribed by ORS 164.395, were armed with a pocketknife and used that pocketknife to facilitate the robbery. Defendants argued, both in motions for directed verdict at the close of the state's case and for judgment of acquittal after all evidence was in, that the pocketknife was not a "deadly" weapon as a matter of law, and that the state had therefore failed in its proof. The trial court agreed with defendants' contention that the pocketknife was not a "deadly" weapon,②

---

① This issue is not before us in this case, but among the grounds for demurrer authorized by ORS 135.630 are:

"* * * * *

"(2) It does not substantially conform to the requirements of ORS 132.510 to 132.570, 132.590, 132.610 to 132.690, 132.710 and 132.720;

"(3) More than one crime is charged in the indictment; "* * * * *."

② Whether the trial court was correct in this determination is not before us on this appeal. However, a review of the commentary of the legislative revision commission on the proposed crim-

but declined to grant defendants' motions. Instead, since the state had shown use of the knife in accordance with its allegations in the indictment, the court decided to instruct the jury solely on the theory of paragraph (b) of ORS 164.415 (1), viz., that defendants had used or attempted to use a "dangerous" weapon. Nowhere in its instructions did the trial court mention the definition of "deadly" weapon, nor did it attempt to alert the jury to the fact that the indictment, which the jury had with them in the jury room, utilized different terminology than that used by the court in its instructions. This could have been a source of confusion to the jury, and we believe that the trial court should have informed the jury explicitly that "deadly weapon" used in the indictment included "dangerous weapon" as discussed hereafter in this opinion.

██ We have dealt with the above matters at some length because we believe that they are matters which could easily have been avoided by the state and the trial court in this case, and can and should be avoided in the future. However, when we shift our attention to the actual merits of these appeals, the question is whether the variance between the pleading and the proof was material or prejudicial to the defendants in making their defenses. *State v. Schoene,* 10 Or App 390, 499 P2d 834, Sup Ct *review denied* (1972). One test of whether a variance is material is whether it is such that it might have misled the defendant at trial. 5 Wharton, Criminal Law and Procedure 202-203, § 2056 (Ander-

---

inal code suggests that such a knife, because of its fairly common use as an offensive or defensive weapon, could be found to be within the class of "deadly weapons." *See* Proposed Oregon Criminal Code Final Draft and Report 3-4, Art 1, § 3, Commentary (1970).

son 1957). As stated in *State v. Cook,* 154 Or 62, 66-67, 59 P2d 249 (1936):

"A variance as to a matter which is not material is not fatal. Under the modern practice, a variance is not material unless it misleads the accused in making his defense or may expose him to the danger of again being put in jeopardy for the same offense. The purpose of the rule as to a variance is to avoid surprise: 31 C.J. 840, § 451. 'Variance between allegation and proof which does not go to the extent of showing that the offense proved is not the offense charged is immaterial.' [Citations omitted.]"

Defendants are correct in pointing out, of course, that

" 'Article I, section 11, of the Oregon Constitution provides that in "all criminal prosecutions, the accused shall have the right * * * to demand the nature and cause of the accusation against him, and to have a copy thereof * * *." * * * [State v. Green, 245 Or 319, 322, 422 P2d 272 (1966)]' "

But defendants do not go beyond a mere citation of that principle to assert wherein they were misled as to the nature of the accusation, nor are we able to discern any way in which they could have been prejudiced in preparing their defenses. The only matter about which defendants can conceivably complain is that the indictments alleged attempted use of a "deadly weapon," while the state proved and the trial court instructed on attempted use of a "dangerous weapon." We fail to see how this could have misled defendants, since the concept of a "dangerous" weapon is necessarily included in the concept of a "deadly" weapon. That being so, one who is put on notice that he must defend against an allegation that he attempted to use a deadly weapon and prepares his defense accordingly, has, of necessity, prepared his defense to a

charge of using a dangerous weapon, since an article in the former class has all of the characteristics of an item in the latter.

We conclude that the variance in this case was not material or prejudicial, and the judgment of the trial court is therefore affirmed.

Affirmed.