Argued and submitted December 21, 1995, reversed and remanded in part; vacated in part; otherwise affirmed February 21, petition for review denied April 30, 1996 (323 Or 153)

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL EDWARD ALBEN,
*Appellant.*

## (C940697CR; CA A86512)

911 P2d 1239

Ingrid A. MacFarlane, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

■    Defendant was convicted of robbery in the first degree, ORS 164.415, aggravated theft in the first degree, ORS 164.057, and unlawful use of weapon, ORS 166.220. He appeals only from the conviction for robbery in the first degree, and argues that the trial court's instructions to the jury for that offense constituted in substance an amendment to the indictment, and therefore violated Article VII (Amended), section 5, of the Oregon Constitution. We reverse the conviction for robbery in the first degree.

On April 16, 1994, defendant and Max Muller entered a store and asked to speak to the person in charge. A store employee directed them to Randy Crouse. Muller told Crouse he wished to discuss privately a complaint that he and defendant had about a store employee, and Crouse directed them to the store office. Once inside, Muller told Crouse that defendant had a gun and that Crouse should lie on the floor with his hands behind his back and his eyes closed. Crouse testified that he caught the glimpse of a gun stuck in defendant's pants and that, from the size of the gun's magazine, he believed that it was a nine millimeter handgun. He also testified that he saw a clip in the gun's magazine. Muller was unable to open the safe, so he demanded that Crouse open it for him. Crouse did as he was told, and then was ordered to lie back down on the floor. He testified that during the time that he was lying on the floor, defendant pressed something against his head, which Crouse assumed was the gun that he had seen. Defendant and Muller then took all the money out of the safe and Muller asked Crouse before leaving, "[D]o you know how far a .22 will shoot?"

Defendant was arrested for the robbery two days later. Later that same day, police officers searched defendant's residence pursuant to a search warrant and found approximately $7,000 in cash and two BB pistols. However, the officers did not find any handguns, nor did they find any bullets for handguns. At trial, the manager of the residence testified that, sometime after the officers left, she found a box of bullets while packing defendant's belongings. One of the officers testified that the manager's description of the bullets'

appearance was consistent with the appearance of a nine millimeter bullet.

A grand jury indicted defendant. The indictment said, in part:

> "[Defendant is] accused by the Grand Jury of Washington County by this indictment of the crime(s) of Robbery in the First Degree with a Firearm (Class A Felony) in Count 1, Aggravated Theft in the First Degree (Class B Felony) in Count 2, and Unlawful Use of a Weapon (Class C Felony) in Count 3, committed as follows:

> "That [defendant] on or about April 16, 1994, in Washington County, Oregon, did unlawfully and knowingly threaten the immediate use of physical force upon Randy Crouse, and *was armed with a deadly weapon, to-wit: a firearm,* while in the course of committing theft of property, to-wit: money, with the intent of preventing and overcoming resistance to said defendant's taking and retention immediately after the taking of the said property,

> "The State further alleges that during the course of the above-described offense the defendant used a firearm." (Emphasis supplied.)

During its opening statement at trial, the state asserted that the evidence would show that defendant and Muller used a nine millimeter handgun in the robbery. The state proceeded with that theory throughout its case-in-chief. The state elicited testimony from Crouse and the police officer who searched defendant's apartment. When the prosecutor questioned Crouse regarding the BB pistols, Crouse testified that neither pistol was the weapon used in the robbery and identified various characteristics of the BB pistols that were inconsistent with the gun that he had seen during the robbery.

In the defense's case, defendant testified, admitting that he participated in the robbery. He said that he was carrying a BB pistol, not a handgun, and that he had never removed the pistol from his pants, and had never placed it against Crouse's temple. The trial court instructed the jury as follows:

> "In this case to establish the crime of robbery in the first degree the State must prove beyond a reasonable doubt the following six elements.

"* * * * *

"Sixth, that *either [defendant] or Mr. Muller was armed with a deadly weapon or used a dangerous weapon* or attempted to use a dangerous weapon.

"* * * * *

"The term 'dangerous weapon' means any instrument, article or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury.

"The term 'deadly weapon' means any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury." (Emphasis supplied.)[1]

In its closing statement, the state made it clear that its theory of the case was that defendant had used a "deadly weapon," a nine millimeter handgun. However, as an alternate theory, it also asserted that if defendant had carried a BB pistol, he was still guilty of robbery in the first degree, because the BB pistol was a "dangerous weapon" under the circumstances in which he used it. The jury found defendant guilty of all three offenses and, in answer to a special interrogatory, found that defendant did not use or threaten the use of a firearm during the offenses. Thus, the jury could only have found defendant guilty of first-degree robbery based on the possession and use of the BB pistol.

Defendant assigns error to the court's instruction. He argues that the trial court's instruction amended the indictment in substance, and that under the holding in *State v. Wimber*, 315 Or 103, 843 P2d 424 (1992), such an amendment is unauthorized under Article VII (Amended), section 5,[2] of the Oregon Constitution. The state counters that the

---

[1] *See* ORS 161.015(1) and ORS 161.015(2). ORS 161.015(1) defines dangerous weapon somewhat differently from the trial court's instruction. It provides:

"(1) 'Dangerous weapon' means any weapon, device, instrument, material or substance which under the circumstances in which it is used or attempted to be used or threatened to be used is readily capable of causing death or serious physical injury."

[2] The pertinent provisions of section 5 state:

"(3) [A] person shall be charged in circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury.

"* * * * *

issue is controlled by our holding in *State v. Hanson/Hughes*, 14 Or App 586, 513 P2d 1202, *rev den* (1973). The state says that the concept of a "dangerous weapon" is necessarily included in the definition of a "deadly weapon" and that, therefore, a court may give an alternative instruction even though the charging instrument does not allege a "dangerous weapon."

■ ■ In *Wimber*, the court considered whether a trial court's instruction changing the time period from that specified in the indictment was an amendment in form or substance. It explained that the analysis involves four questions. 315 Or at 114-15. We discuss only the first two, because if either of them is answered in the affirmative, the amendment violates Article VII (Amended). They are:

> "(1) Did the amendment alter the essential nature of the indictment against defendant, alter the availability to him of defenses or evidence, or add a theory, element, or crime? * * *

> "(2) Did the amendment prejudice defendant's right to notice of the charges against him and to protection against double jeopardy?" *Id.*

Defendant contends that the instruction was a change in substance because it altered the availability of his defense that he was not carrying a deadly weapon as alleged in the indictment.[3]

In *Hanson/Hughes*, which the state argues controls this case, this court considered a situation similar to the one before us now and allowed the trial court to instruct the jury in a manner that departed somewhat from the indictment. In that case, the state indicted the defendants for first-degree robbery:

> "[They] * * * did unlawfully and knowingly threaten the immediate use of physical force upon [the victim], by being armed with a deadly weapon, to-wit: a knife, and did

---

"(6) The district attorney may file an amended indictment * * * whenever, by ruling of the court, an indictment * * * is held to be defective in form."

[3] The state does not dispute defendant's assertion that a BB gun is neither a firearm nor a deadly weapon.

attempt to use said deadly weapon to threaten the * * * victim[.]" 14 Or App at 588.

At trial, the state produced evidence that the defendants used a pocketknife to facilitate the robbery. The defendants moved for a directed verdict on the ground that a pocketknife was not a "deadly weapon" as a matter of law, and that the state had failed to prove the allegations of the indictment. The court agreed with defendants, but nevertheless refused to grant a directed verdict. Instead, it instructed the jury that it could find that the defendants committed the crime if they used or attempted to use a "dangerous weapon."

We affirmed the trial court, concluding that the instruction did not constitute a material variance from the indictment. Although the question was not before us, we noted that a pocketknife could be found to be within the classification of a "deadly weapon." We explained:

> "The only matter about which defendants can conceivably complain is that the indictments alleged attempted use of a 'deadly weapon,' while the state proved and the trial court instructed on attempted use of a 'dangerous weapon.' We fail to see how this could have misled defendants, since the concept of a 'dangerous' weapon is necessarily included in the concept of a 'deadly' weapon. That being so, one who is put on notice that he must defend against an allegation that he attempted to use a deadly weapon and prepares his defense accordingly, has, of necessity, prepared his defense to a charge of using a dangerous weapon, since an article in the former class has all of the characteristics of an item in the latter." *Id.* at 592-93.

Although we now question our reasoning in *Hanson/Hughes*, it is clear that our holding was based on the fact that there was no dispute about what weapon had been used, only its legal classification. In other words, no prejudice occurred to the defendants based on the wording of the indictment because they knew from the indictment that they were charged with the use of a knife. The facts in this case differ significantly. The indictment alleges a firearm as the weapon used, and although the state was aware of the existence of the BB pistols, it proceeded throughout its case-in-chief with the theory that the defendant had robbed the victim with a nine millimeter handgun. Thus, defendant was

required to defend against the evidence that he had used a deadly weapon. He did so by offering evidence that he was not carrying a firearm.

The trial court's instruction permitted a conviction on an unindicted crime and in effect amended the indictment in two ways. It added the "use of a dangerous weapon" as a means by which a defendant could be found guilty of first-degree robbery, and it deleted the specific means, "to wit: a firearm," by which the indictment stated how the offense occurred. In *State v. Moyer*, 76 Or 396, 149 P 84 (1915), the court stated:

> "[T]he test of the amendment is whether the same defense is available to the defendant after the amendment as before and upon the same evidence." *Id.* at 399; *see also State v. Wilcox*, 110 Or App 490, 495, 823 P2d 1009 (1992).

The amendment in this case fails that test. In response to the state's initial theory of the case, defendant put on evidence that, if believed, would have provided a defense. Although he admitted being in possession of a BB pistol, he denied being in possession of a deadly weapon. The amendment provided the state with a different theory of the case, altered the availability of defendant's defense, and prejudiced defendant's right to notice of the charges against him. We therefore conclude that the trial court erred in its instructions on the charge of first-degree robbery, and reverse that conviction.

Defendant also assigns error to the court's order requiring him to pay a compensatory fine of $13,000 to the victim. The trial court ordered that amount to be paid as part of defendant's sentence for first-degree robbery. Because we reverse that conviction, the underlying predicate for the compensatory fine no longer exists, and we necessarily vacate the fine as well.

Conviction for first-degree robbery reversed and remanded for new trial; compensatory fine vacated; otherwise affirmed.