Submitted April 25, affirmed December 18, 2013, petition for review denied
March 14, 2014 (354 Or 840)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JERID NICHOLAS GUCKERT,
*Defendant-Appellant.*

Douglas County Circuit Court
09CR1355FE; A147795

316 P3d 373

Peter Gartlan, Chief Defender, and Susan F. Drake, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Susan G. Howe, Senior Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Duncan, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant was charged with sexual abuse in the first degree, ORS 163.427.[1] The indictment specified that he subjected S.W., "a person who was physically helpless, to sexual contact by touching her vagina, a sexual or intimate part." He was convicted after a jury trial. On appeal, he assigns error to the trial court's denial of his motion for a judgment of acquittal (MJOA), arguing that, while evidence supports the inference that he removed a tampon from S.W. while she was unconscious, there is no evidence that, in doing so, he touched her vagina. He also assigns error to the court's instruction to the jury that it could find him guilty if he subjected S.W. to "sexual contact"; according to defendant, that instruction allowed the jury to convict him for conduct that was not alleged in the indictment, because the indictment specified that he touched S.W.'s vagina, whereas the instruction would allow the jury to convict him for touching some other intimate part of her body. We conclude that the court did not err in denying defendant's MJOA. We also conclude that, although the court's jury instruction was error, it was not prejudicial. We therefore affirm.

The following facts are not in dispute on appeal. S.W. and her boyfriend invited a group of friends, including defendant, to their apartment for a party. The hosts and guests spent the evening enjoying the patio, playing video games, and drinking vodka. Toward the end of the night, several of

---

[1] ORS 163.427 provides, in relevant part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"* * * * *

"(C) The victim is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless[.]"

ORS 163.305(6), in turn, defines "sexual contact" as "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party."

Defendant was also convicted of fourth-degree assault, strangulation, and harassment, and his brief challenges those convictions as well. However, the assignments of error that he raises (with the exception of his challenge to a nonunanimous jury verdict, which we reject without discussion) are relevant only to the first-degree sexual abuse charge.

the guests, having had too much to drink, passed out. S.W., who describes herself as a "clean freak," stayed awake to clean the apartment. Another guest, Tidmarsh, also stayed awake to help her.

As they were cleaning the kitchen, defendant walked into the room and asked S.W. if they could talk. S.W. left Tidmarsh in the kitchen and followed defendant into the bathroom. Once in the bathroom, defendant told S.W. that he was feeling sick. Believing that defendant was so drunk that he was about to vomit, S.W. started to leave the bathroom. As soon as her back was turned, defendant grabbed her around the neck, making it impossible for her to breathe. The next thing that S.W. remembered was waking up naked on the bathroom floor.

Before S.W. passed out, she called out to Tidmarsh, who immediately knew that something was wrong. He pounded on the locked bathroom door, but defendant refused to open it, saying, "I'll be out in a minute." Tidmarsh then broke into the bathroom and saw defendant choking S.W., who was completely naked. Defendant was fully clothed. Tidmarsh hit defendant on the head but could not make him release his grip. Tidmarsh then left the bathroom and woke up S.W.'s boyfriend.

At that point, defendant left the bathroom, passing Tidmarsh and the boyfriend on his way out. Defendant told them, "I'm drunk," and he collapsed on the floor. The boyfriend revived S.W., brought her into the bedroom, and helped her get dressed. Meanwhile, Tidmarsh attempted to wake defendant by kicking him, but was unsuccessful. The boyfriend and Tidmarsh dragged defendant out of the house while S.W. called 9-1-1.

When police arrived, defendant was unconscious in front of the apartment building. Police entered the apartment and began collecting evidence. They found a used tampon in the garbage can next to the toilet. Before being transported to the hospital, S.W. told police that she had placed the tampon in the garbage and inserted a new one. Once at the hospital, she told police that she "did not think anything had happened" and declined a rape examination. Later that

evening, however, she realized that there was no tampon in place. She concluded that it was defendant who had removed her tampon. She subsequently returned to the hospital for a rape examination. That examination did not find any DNA belonging to defendant.

A grand jury indicted defendant on six counts, including sexual abuse in the first degree. With respect to that charge, the indictment accused defendant of "unlawfully and knowingly subjecting [S.W.], a person who was physically helpless, to sexual contact by *touching her vagina*, a sexual or intimate part of [S.W.]." (Emphasis added.) At trial, defendant moved for a judgment of acquittal on the theory that the state had presented no evidence that he touched S.W.'s vagina; the only evidence was that he had removed a tampon from her while she was unconscious. The court denied the motion. After closing arguments, defendant objected to the court's jury instructions regarding sexual abuse in the first degree, which provides:

> "Oregon law provides that a person commits the crime of sexual abuse in the first degree when the person knowingly subjects another person to sexual contact when the victim is incapable of consent by reason of being physically helpless. In this case to establish the crime of sexual abuse in the first degree the state must prove beyond a reasonable doubt the following * * * elements. One, the act occurred in Douglas County, Oregon. Two, the act occurred on or about February 21st, 2009. Three, [defendant] knowingly subjected [S.W.] to sexual contact. And, four, [S.W.] was incapable of consent by reason of being physically helpless.
>
> "* * * * *
>
> "Sexual contact means touching of a sexual or intimate part of a person or causing such person to touch a sexual or other intimate part of the actor for the purpose of arousing or gratifying the sexual desire of either party."

Defendant argued that the jury instruction had to be amended to specify that, to return a verdict of guilty on the first-degree sexual assault charge, the jury had to decide that defendant touched S.W.'s vagina, which was the specific touching alleged in the indictment, and not just any "sexual or intimate part" of S.W. The trial court denied defendant's

request, and the jury found defendant guilty. On appeal, defendant assigns error to the denial of his MJOA and of his request for a special jury instruction.

We review a trial court's denial of an MJOA to determine if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). If the state has sought to establish an element of a criminal offense by reasonable inference, however, whether sufficient evidence supports the inference is a question for a court to decide. *Delgado v. Souders*, 334 Or 122, 135, 46 P3d 729 (2002). Defendant does not argue that there was insufficient evidence to suggest that S.W. was physically helpless, that he removed her tampon, or that he did so for a sexual purpose. Rather, defendant argues that "[t]he removal of a tampon does not support a reasonable inference that defendant touched [S.W.'s] vagina," as charged in the indictment.

In support of his argument, defendant cites *State v. Bivins*, 191 Or App 460, 83 P3d 379 (2004), and *State v. Moreno*, 197 Or App 59, 104 P3d 628 (2005), both cases in which we discussed the difference between a permissible logical inference and impermissible speculation. In *Bivins*, the issue was whether a jury could reasonably infer that the defendant committed an assault that was witnessed by his two children. 191 Or App at 463. The evidence demonstrated that the children were in a different room of the house when, during a protracted argument, the defendant slapped his girlfriend, who was also the mother of the two children. *Id.* at 462, 468. Testimony during trial also suggested that the sound of the assault could easily have been heard in different parts of the house. *Id.* at 468-69. We reasoned, however, that the jury was left to infer (1) that the slap produced a distinctive sound, (2) that the sound rose above the noise of the argument, (3) that the children actually paid attention to the sound made by the slap, and (4) that they recognized it as the sound of the defendant striking his girlfriend. *Id.* at 469-70. We concluded that "the minimal circumstantial evidence presented by the state requires too much stacking of inferences and, ultimately, too great an inferential leap." *Id.* at 470.

In *Moreno*, the defendant was convicted of possessing a precursor substance with the intent to manufacture a controlled substance. 197 Or App at 61. At trial, the state was able to show that the defendant stole and possessed 15 grams of cold medicine containing pseudoephedrine, a chemical that can be used to make methamphetamine. *Id.* at 64. The state offered no evidence demonstrating that the defendant knew how to process the cold medicine into methamphetamine, had any equipment to do so, or was working in concert with any other individual who intended to manufacture methamphetamine. *Id.* at 64-65. Nonetheless, the state argued that the jury could reasonably infer that the defendant had the requisite "conscious objective to manufacture methamphetamine." *Id.* at 64 (internal quotation marks omitted). As in *Bivins*, we concluded that such an inference "requires too great a leap and would require speculation, rather than logical inference." *Id.*

The line between permissible inference and impermissible speculation is not always a bright one. Quoting one federal court, we have observed:

> "'The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts.'"

*Bivins*, 191 Or App at 467 (quoting *Tose v. First Pennsylvania Bank, N.A.*, 648 F2d 879, 895 (3d Cir), *cert den*, 454 US 893 (1981)) (citations and some internal quotation marks omitted). The present case falls well on the "permissible inference" side of that line. The inferences in *Bivins* and *Moreno* are easily distinguishable. Assuming that, for the purposes of ORS 163.427, it is possible to remove a tampon without touching a woman's vagina, no great inferential leap is required to conclude that defendant did not accomplish that feat. The state produced evidence that defendant was highly intoxicated, that he choked S.W. until she was unconscious,

locked her into a bathroom, stripped off all her clothes, and proceeded to remove her tampon. The only inference left for the jury to make was that defendant in fact touched her genitals while removing the tampon. We conclude, however, that, given defendant's state of intoxication and his other behavior, which evidences little finesse and less regard for S.W.'s personal dignity, a rational trier of fact could find beyond a reasonable doubt that defendant touched the victim's vagina.

In his second assignment of error, defendant argues that the trial court "impermissibly amended the indictment" by instructing the jury that it could convict him of first-degree sexual abuse based on acts not alleged in the indictment. We review the trial court's jury instructions for errors of law. *State v. Pierce*, 235 Or App 372, 374, 232 P3d 978 (2010).

A jury instruction can, in some circumstances, have the effect of functionally amending a grand jury's indictment. *See, e.g., State v. Alben*, 139 Or App 236, 243, 911 P2d 1239, *rev den*, 323 Or 153 (1996). Such an amendment is permissible if it merely changes the form of the indictment; it will, however, violate Article VII (Amended), section 5, of the Oregon Constitution[2] if it changes the substance of the indictment. *State v. Wimber*, 315 Or 103, 113, 843 P2d 424 (1992); *State v. Long*, 320 Or 361, 370 n 13, 885 P2d 696 (1994), *cert den*, 514 US 1087 (1995) (criminal defendant has constitutional right to be tried only for the specific criminal act in the indictment). *Wimber*, 315 Or at 114-15, specifies several questions that are relevant to the determination of whether an amendment is one of form or substance. Two are relevant in the context of this case:

> "(1) Did the amendment alter the essential nature of the indictment against defendant, alter the availability to him of defenses or evidence, or add a theory, element, or crime? * * *

---

[2] The Supreme Court has held that Article VII (Amended), section 5, provides that a defendant in a criminal trial "has the constitutional right to be tried only for the specific criminal act as to which the grand jury handed down the indictment." *State v. Long*, 320 Or 361, 370 n 13, 885 P2d 696 (1994), *cert den*, 514 US 1087 (1995).

"(2)   Did the amendment prejudice defendant's right to notice of the charges against him and to protection against double jeopardy?"

*Id.* If either of these questions is answered in the affirmative, the amendment violates Article VII (Amended), section 5. *Alben,* 139 Or App at 241. Defendant argues, as he did below, that the trial court's instructions were a substantive amendment to the grand jury's indictment because the instructions "expanded the range of criminally culpable conduct * * * by allowing the jury to convict if it found sexual contact with any [intimate] body part," and not merely with S.W.'s vagina. That variance was prejudicial, defendant argues, because it "added a new theory to the state's case" and because it deprived him of the defense he raised, namely, that "the evidence did not prove beyond a reasonable doubt that he had touched [S.W.'s] vagina." The state responds that it did not argue, or present any evidence suggesting, that defendant sexually abused S.W. by touching a different "intimate part" of her body. As a result, argues the state, the instructions neither added a new theory of criminal liability nor deprived defendant of a viable defense.

Defendant has the better argument. As he notes, we addressed similar issues in *Alben* and *Pierce*. In *Alben,* a grand jury indictment charged the defendant with, among other crimes, the unlawful use of a weapon. 139 Or App at 239. The charges were based on a robbery committed by the defendant and another individual, Muller. *Id.* at 238. The indictment alleged that, during the robbery, the defendant did "unlawfully and knowingly threaten the immediate use of physical force * * * and was armed with a deadly weapon, to-wit: a firearm[.]" *Id.* at 239 (internal quotation marks and emphasis omitted). At trial, the defendant admitted to participating in the robbery but argued that, in fact, he had only been armed with a BB pistol, not a firearm. *Id.* At the conclusion of the trial, the trial court instructed the jury that it could convict the defendant of unlawful use of a weapon if it found "that either defendant or Mr. Muller was armed with a deadly weapon or used a dangerous weapon or attempted to use a dangerous weapon." *Id.* at 240 (brackets and emphasis omitted). We reversed the subsequent conviction, reasoning that the trial court's instructions had "provided the state

with a different theory of the case, altered the availability of defendant's defense, and prejudiced defendant's right to notice of the charges against him." *Id.* at 243. In particular, we noted that, "[i]n response to the state's initial theory of the case, defendant put on evidence that, if believed, would have provided a defense. Although he admitted being in possession of a BB pistol, he denied being in possession of a deadly weapon."[3] *Id.*

In *Pierce*, 235 Or App at 374, the defendant was charged with the unauthorized use of a motor vehicle, ORS 164.135. The indictment was based on the allegation that the defendant, along with several other individuals, "did unlawfully and knowingly take a vehicle, to-wit: a Ford pick-up without the consent of the owner." *Id.* at 374-75 (emphasis and internal quotation marks omitted). The defendant testified "that he did not drive [the] truck or participate in stealing it, but rather that his friends already had the truck when he met them that morning." *Id.* at 375. The trial court, however, instructed the jury that "[t]he crime of Unauthorized Use of a Motor Vehicle can be committed by either taking, operating, exercising control over, riding in or by otherwise using the vehicle. Proof of any means is sufficient to sustain a conviction." *Id.* We reversed the conviction even though, "in its opening statement and closing argument, the state focused solely on the taking of the truck[.]" *Id.* at 377. We reasoned that the trial court's instruction was prejudicial, because the defendant's own testimony provided evidence from which a jury could conclude that the defendant rode in the truck. *Id.* Because the trial court instructed the jury that it could convict on that basis, we concluded that the instruction, in effect, "permitted a conviction on an unindicted crime." *Id.* at 376.

In both *Alben* and *Pierce*, the indictments alleged that the defendant committed crimes by engaging in specified, particular acts, while the jury instructions allowed for guilty verdicts based on commission of the crime by different acts. The same situation occurred here. The variance between the specific act charged in the indictment and the more expansive set of acts included in the jury instruction

---

[3] We accepted the defendant's assertion that, under the facts of the case, a BB gun was neither a firearm nor a deadly weapon. *Alben*, 139 Or App at 241 n 3.

"add[ed] a theory." *Wimber*, 315 Or at 114. In particular, it added the theory that, although defendant may not have touched S.W.'s vagina, he touched some other intimate part. The court erred in denying defendant's request for a special jury instruction.

That conclusion, however, does not end the inquiry. Instructional error, like any other error, does not justify reversal unless the error was prejudicial. Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm despite error if there is "little likelihood that the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Here, we conclude that the trial court's jury instructions did not prejudice defendant. That is so because, unlike in either *Alben* or *Pierce*, there was no evidence from which a jury could conclude that defendant sexually assaulted S.W. by touching any part of her body other than her vagina. She testified that she had no memory of anything that happened after defendant began choking her. Likewise, Tidmarsh (the only person to actually see defendant touching the victim) testified that he saw defendant with his hands around her neck and nowhere else. Moreover, the only theory that the state argued was based on defendant touching S.W.'s vagina. Most significantly, the prosecutor told the jury during his closing argument that "sex abuse in the first degree, as it's been described here and as he was charged by the Grand Jury, is unlawfully and knowingly subject[ing] [S.W.], a person who is physically helpless, to sexual contact by touching her vagina, which is a sexual and intimate part." Moreover, defendant was not prejudicially deprived of an available defense. In *Alben* and *Pierce*, in order to defend against specific charges, the defendants admitted to other conduct that could have been, but was not, charged in the indictments. Therefore, when the trial courts amended the indictments by instructing the jury that they could convict based upon conduct that the defendants had acknowledged, the defendants suffered prejudice. Nothing similar to those acknowledgments occurred here. In sum, we conclude that the instructional error was not prejudicial. We therefore affirm.

Affirmed.